Heinze vs. South Green Bay Land & Dock Co. and others.

HEINZE, Appellant, vs. SOUTH GREEN BAY LAND & DOCK
    COMPANY and others, Respondents.

*January 14 — February 1, 1901.*

*Corporations: Defective organization: Right to do business: Personal
liability of stockholders: Estoppel: Officers: Authority to make con-
tracts: Payment on stock: Presumptions: Court and jury.*

1. The personal liability of stockholders in a corporation upon obliga-
tions incurred before it was authorized to transact business with
others than its members is governed by the statute in force when
such obligations were incurred.

2. In an action to enforce the personal liability of stockholders under
sec. 1773, S. & B. Ann. Stats., defendants who had subscribed for
stock in the corporation, accepted office in it, and assumed to act
as directors in the transaction of corporate business cannot deny
that they were stockholders.

3. Where one of the subscribers to stock was elected president at a
meeting of certain of the signers of the articles of incorporation
who had elected themselves directors, and such person acted as
president with the knowledge of, and upon direct authority con-
ferred by, the board, his title to the office cannot be tried in a col-
lateral proceeding; and the persons who assisted in his election,
and who have since acted with him, are estopped, as against third
parties, from questioning his title to the office.

4. Where a person has been elected president of a corporation by a
*de facto* board of directors, and, by a by-law, has been given gen-
eral supervision of its entire business and authority to sign all con-
tracts, the corporation is bound by a contract made by him in its
name with a third person, which is directly in line with the gen-
eral purpose and course of business of the corporation, and neces-
sary in order to fully carry out the corporate purpose.

5. After the organization of a corporation to develop a tract of land in
the neighborhood of a city, a surveyor came to the directors with
a letter of introduction from the president, and as officers they
directed his operations in platting the land, a work which was
necessary to carry out the purpose of the corporation. In an ac-
tion by him under sec. 1773, S. & B. Ann. Stats., to enforce the per-
sonal liability of the stockholders for his services, *held*, that the
directors were estopped to deny knowledge of the contract, executed
by the president in the name of the corporation, under which the
surveyor performed the work.

Heinze vs. South Green Bay Land & Dock Co. and others.

6. The fact that the directors had a secret agreement with the president that no corporate liability should be incurred until he had provided funds sufficient to pay, would not relieve them from personal liability.

7. The personal liability of stockholders in such a case does not depend upon knowledge or acquiescence by the individual stockholder, but rather upon his relation to the corporation.

8. A corporation was organized for the development of a tract of land, with a capital stock of 10,000 shares of $100 each, M. subscribing for 9,996 shares. At a meeting of the directors a resolution was adopted that the company negotiate with M. for the purchase of said tract at a price not exceeding $1,000,000, payable in stock. Two weeks later M. conveyed the property to the corporation, subject to the incumbrances, for a recited consideration of $700,000. M. had shortly before purchased the land by giving a mortgage for $44,000 on it and assuming prior mortgages and liens, and it appeared that it was mortgaged for its full value. There was nothing to show that there were any negotiations under said resolution, or that the conveyance was received as a payment on stock. *Held,* that it could not be assumed that said $700,000 was a payment of seventy per cent. of the stock of the corporation.

9. In an action to enforce the personal liability of stockholders in a corporation, under sec. 1773, S. & B. Ann. Stats., the fact that a defendant had signed the original subscription list for stock, together with his admission that he was a stockholder and acted as president of the corporation at a date subsequent to the making of plaintiff's contract, is *held* sufficient, at least, to justify the submission to the jury of the question whether he was a stockholder at the time said obligation was incurred.

APPEAL from a judgment of the circuit court for Winnebago county: GEORGE W. BURNELL, Circuit Judge. *Reversed.*

The defendants *Elmore* and *Vander Zee* with others, constituting the Allouez Improvement Company, were the owners, subject to several mortgages and liens, of a considerable tract of land a few miles south of the city of Green Bay, which had been purchased with a view to platting and development. In the summer of 1894 they had negotiations with a Chicago attorney and promoter, *Marks,* resulting in the sale to him of said land for $44,000 in excess of the existing mortgages and liens, on the understanding that *Marks*

would be able to develop the same, relieve them and their associates from the liability which they were under for the purchase price of the land, and incidentally promote the prosperity of the city of Green Bay, of which *Elmore* was mayor.  *Marks* explained to them the necessity, to the accomplishment of those plans, of the organization of a corporation, and the necessity of Wisconsin citizens to effect such organization; whereupon said *Elmore* and *Vander Zee* and the defendant *Hollman* executed articles of association, on July 2, 1894, for the organization of the *South Green Bay Land & Dock Company*, on a capital of $1,000,000.  Thereafter a subscription for capital stock was signed, whereby *Marks* subscribed for 9,996 shares, and *James H. Elmore*, *Fred. A. Hollman*, *Frank Vander Zee*, and *Albert Heimann* each for one share.

Nothing further was done towards incorporation until February 7, 1895, at 10 o'clock of which day an attempted stockholders' meeting was held, but appears to have been suspended by reason of the discovery that the articles of association had not yet been filed.  They were accordingly filed at 10:45 a. m., and at half past 11 a new stockholders' meeting was held, at which were present all of the subscribers to capital stock except *Hollman*.  That meeting elected *Marks*, *Elmore*, and *Vander Zee* a board of directors.  At noon of that day the three directors met in directors' meeting, and elected *Marks* president, *Elmore* vice-president and treasurer, and *Vander Zee* secretary.  At an adjourned meeting of the directors on the same day a resolution was adopted that the company negotiate with *Marks* for the purchase of the lands in question at a price not exceeding $1,000,000, payable in stock of the company at par, and that upon completion of such purchase the president and secretary be authorized to issue capital stock in payment of the purchase price.  Thereafter frequent directors' meetings were held, usually by *Elmore* and *Vander Zee*, at one of

which were adopted by-laws, among others, defining the
duty of the president to exercise general supervision over
the entire business of the company and management of
every department, and providing that all the property of the
company should be under his control, and that he should
execute all bonds, contracts, or other instruments. The ar-
ticles of association also provided, among the principal duties
of the president, that he should have general supervision of
the affairs of the corporation, and sign all deeds, leases, con-
tracts, and conveyances.

On February 27th attempted meetings of both stockhold-
ers and directors were held, authorizing the issue of bonds
to the amount of $300,000, and the securing of the same by
mortgage on the lands; and a corporate seal was adopted.
On that day *Marks* executed a deed to the corporation of
the lands he had purchased, as above mentioned, for the ex-
pressed consideration of $700,000. The defendants testify
that *Marks* agreed that he would not incur any obligations
on behalf of the corporation until he had raised money to
clear off the incumbrances on the land and to proceed with
the development and promotion thereof; the amount not
being very definite in the testimony, but varying from
$100,000 to $400,000.

On March 9, 1895, *Marks*, at Chicago, entered into a con-
tract, in form between the corporation and the plaintiff, for
the survey and platting of the lands at the price of $1,350,
payable at times therein stipulated. Plaintiff immediately
proceeded to Green Bay, and performed the contract on his
part under the eye and with the knowledge of *Elmore* and,
to some extent, *Vander Zee*, who, however, claimed to have
had no knowledge that he was working under a contract
with the company, but supposed he was employed by *Marks*.
The jury find that *Elmore* did know of the existence of the
contract. Plaintiff received $100 upon account from *Marks*,
$65 advanced to him by *Elmore*, as the latter claims by way

of loan, and $30 in a guaranty by *Elmore* of the bill for stakes to be used in the survey. After completing the contract in June, *Marks* gave the plaintiff notes of the corporation, signed by himself as president, which never were paid. Plaintiff sues the corporation and the five stockholders for the balance due on that contract.

A special verdict was taken, finding that plaintiff had good reason to believe, and did believe, in the authority of *Marks* as president to make the contract; that *Elmore* knew he had the contract; that the defendants *Elmore* and *Vander Zee* did not acquiesce in and accept the work knowing that the plaintiff believed himself to be at work for the corporation; that plaintiff was not notified before the work was done that *Marks* had no authority to bind the corporation.

Both parties moved for judgment, and the court, after filing an opinion, preserved in the bill of exceptions, rendered judgment in favor of the plaintiff against the defendant *Heimann*, together with judgment of nonsuit against *Hollman*, dismissed the action against *Marks* for want of jurisdiction by service of summons, and entered judgment on the merits in favor of the corporation, *Elmore*, and *Vander Zee*. From that opinion the conclusion of nonliability of the corporation and stockholders appears to have been based on the invalidity of the first stockholders' meeting for want of notice and for absence of one of the subscribers to the capital stock, *Hollman*. From that judgment, and the whole thereof, the plaintiff appeals.

*John F. Watermolen*, attorney, and *W. L. Evans*, of counsel, for the appellant.

*H. O. Fairchild*, of counsel, for the respondents *Hollman*, *Elmore*, and *Vander Zee*.

BARDEEN, J. This action is against the defendant corporation, and the other defendants as stockholders, to recover of them for services rendered under a contract with the cor-

poration, and for which it is claimed the defendants are liable under sec. 1773, S. & B. Ann. Stats.    This section provides that "no such corporation shall transact business with any others than its members, until at least one half of its capital shall have been duly subscribed and at least twenty per centum thereof actually paid in; and if any obligation shall be contracted in violation hereof, the corporation offending shall have no right of action thereon; but the stockholders then existing of such corporation shall be personally liable upon the same."    This is the section that was in force when the alleged liability was created, and the defendants' rights must be tested by it, and not by sec. 1773 of the present statutes, as was erroneously supposed by the trial court.    His conclusions in denying relief to plaintiff were based upon the assumption that there never had been any officers of the corporation legally elected; that no corporate action had ever been taken with reference to the alleged contract; and that the defendant stockholders never had knowledge of or acquiesced therein.    It seems to be practically conceded that the corporation came into existence by the filing of the articles of organization on February 7, 1895, and also that all of defendants became stockholders except the defendant *Hollman.*    Concerning him we shall have something more to say later on.    There is a suggestion in respondents' brief that *Elmore* and *Vander Zee* did not become stockholders, but as it is conclusively shown that they subscribed for stock, accepted office in the corporation, and assumed to act as directors in the transaction of corporate business, they are not now in a position to deny such relation.

The contract in suit was made with the president of the company, *Mr. Marks.*    Its enforcement is now denied, upon the ground that as such officer he had no authority to make it: fiirst, because he was not the president *de jure* or *dé facto* of the corporation; second, because he had no power to make such a contract.

The first contention is based upon the ground that there was no proof that the signers of the articles ever assented to or accepted the subscription to stock, and hence there were no stockholders at the time of the alleged election of the board of directors. It is unnecessary to inquire how much force would be given to this suggestion if the controversy were between the original parties. This is not such a case. Here the rights of an innocent third party are involved. *Marks* was elected to office at a meeting of certain of the signers who had elected themselves directors. He acted as an officer of the corporation with the knowledge of, and upon direct authority conferred by, the board. He was recognized as such by the corporation, and his title to the office cannot be tried in a collateral proceeding. *Barthell v. Hencke*, 99 Wis. 660. Such of the defendants as assisted in putting him in that position, and who have since acted with him, as against third parties are estopped from questioning his title to the office.

As regards the second ground, the solution is equally easy. One of the by-laws of the company gave him a general supervision of the entire business of the company, and authority to sign all contracts. In addition, the act in question was directly in line with the general purpose and course of business of the corporation, and necessary in order to fully carry out the corporate purpose. The rules laid down in the following cases are applicable here: *Ford v. Hill*, 92 Wis. 188; *Senour Mfg. Co. v. Clarke*, 96 Wis. 469; *Northwestern F. Co. v. Lee*, 102 Wis. 426; *Hiawatha I. Co. v. John Strange P. Co.* 106 Wis. 111.

There is no question but that all of the defendants, with the possible exception of *Hollman*, knew the work was being done. They aided, assisted, and directed its progress. They were present at different times as it was being carried on. They knew, or must be presumed to have known, that the division of the land into lots and blocks was in

furtherance of the ostensible purpose of the corporation. The plaintiff came to them with a letter from *Marks*. The work he entered upon was necessary in order that the property might be developed as contemplated. The circumstances were amply sufficient to put the defendants upon inquiry as to the source of plaintiff's authority to do the work. As officers of the company they directed his operations, and it is now too late for them to say that they had no knowledge of the contract, even if that fact should be considered a defense. The fact that they had a secret agreement with *Marks* that no corporate liability should be incurred until he had provided sufficient funds to pay does not relieve the defendants from liability, if in fact the work was done for the corporation. A stranger dealing with the corporation without notice of such agreement cannot be affected by it. As officers and directors of the company they were chargeable with some degree of diligence in the management of corporate affairs, and they cannot stand idly by, knowing the corporation was receiving the benefit of plaintiff's labor, and escape liability under the statute on the plea that they did not know the terms of his contract.

This much has been said to meet the theory upon which this case was tried in the court below. We have already determined that the president was clothed with apparent authority to make this contract. It was a contract with a person not a member of the corporation. The obligation thereby contracted was in violation of the statute, which makes the stockholders personally liable. Such liability is not made to depend upon knowledge or acquiescence by the individual stockholders. It rests rather upon their relation to the corporation, which, as we have seen, they are not in a position to deny.

What has been said has been based upon the assumption that stock payments have not been made as required by the statute. We are now met for the first time in this case, it

is said, by the claim that the evidence shows that seventy per cent. of the capital stock had been paid in at the date of the alleged contract. The complaint alleges that no payments upon stock had ever been made. Upon the trial it was shown that the capital stock was 10,000 shares, for which Marks subscribed 9,996 shares, and the other defendants one each. It appears that the land upon which the work was done had been owned by the Allouez Improvement Company, who conveyed it to *Marks*, subject to certain mortgages and liens, on February 14, 1895. He paid no money, but gave a mortgage for about $44,000 for the purchase money, and assumed the prior mortgages and liens. At a meeting of the directors on February 7, 1895, a resolution was passed that the company negotiate with *Marks* for the purchase of this land at a price not exceeding $1,000,000, payable in the stock of the company. On February 27, 1895, Marks conveyed this property to the company for a recited consideration of $700,000. There is no record of any action on the part of the corporation under the resolution of February 7th; no proof of any negotiations between the company and *Marks;* no word in the records that this conveyance was received as a payment on stock. But we are asked to assume that because this conveyance was made, and the consideration was recited to be $700,000, this was a payment of seventy per centum of the stock of the company. No such assumption can be justified, first, because there is no proper evidence to support it; and, second, because the circumstances show that the land was mortgaged for its full value. It is said that there is no allegation in the complaint attacking this transfer. It is alleged that nothing was ever paid on the stock. No attempt was made on the trial to show payment in any way, except a random remark by *Marks* that he transferred land to the company and took stock in payment. The records failed to show any such transaction, and we cannot assume that such was the fact in the face of the other proof in the case.

*Mr. Hollman* was dropped out of the case on the ground that he was never a stockholder. The record shows that he subscribed for one share. In his deposition he admits that he was a stockholder and acted as president of the corporation at a date subsequent to plaintiff's employment. Unexplained, the court would be justified in assuming that his membership dated from his subscription and its acceptance by the corporation. At least, there was sufficient in the case to justify submission of the question to the jury. It may be that he is in a position where he may insist that his subscription was never accepted by the corporation, and that he has been guilty of no act, as against the plaintiff, that would estop him from taking advantage of that fact. We leave that matter to be considered and determined on a new trial, when all the facts are before the court.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.