MEATING, Appellant, vs. TIGERTON LUMBER COMPANY, Respondent.

*January 31—February 18, 1902.*

113    379
115    ²294

*Corporations: Contracts: Ultra vires: Authority of president: Evidence: Direction of verdict: Pleading: Payment: Presumptions: Limitation of actions.*

1. In an action against a corporation to recover wages, it appeared that S. was the president of the corporation, and that he hired plaintiff to work for it. *Held*, that these facts alone were not sufficient to establish defendant's liability.
2. The president of a corporation *ex officio* has no power to contract for it. When expressly authorized by the articles of incorporation or by the board of directors, or when authority arises from having assumed and exercised the power in the past, he may enter into such contracts as pertain to the regular course of the corporate business under his direction, and no more.

3. Plaintiff's testimony tended to show that he was employed by S., president of defendant corporation. No proof was offered that S. had any authority to hire men, or sustained any relation to the corporation except as its president. There was testimony tending to show that for two years prior to the alleged hiring, S., when at home, was the managing officer of defendant. *Held*, that the jury would be justified in finding S. had authority to make the contract with plaintiff, and it was error to direct a verdict for defendant.

4. A complaint failing to allege that the amount due plaintiff has not been paid is not subject to the objection that it does not state a cause of action.

5. There is no presumption of payment within the period of the statute of limitations.

6. Payment is an affirmative defense and must be pleaded or evidence of the fact will be excluded.

APPEAL from a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Reversed.*

The plaintiff brings this action to recover for services alleged to have been performed by him as cook for the defendant. He introduced testimony tending to show that he was hired by H. Swanke, who was president of the defendant corporation, to work for the corporation. No proof was offered by him that Swanke had any authority to hire men, or that he held any relation to the corporation, except that he was president. The evidence of defendant tended to show that the logging camp where plaintiff was employed was operated by H. Swanke & Co., and not by defendant. Such evidence also tended to prove that Swanke was the managing officer of the defendant for two years prior to the time plaintiff was hired. This fact was testified to by the witness Edwards, who was also an officer of defendant, who also said he had charge of defendant's business when Swanke was absent. At the close of the testimony the defendant moved for a direction of a verdict on the ground that it was not shown that defendant was interested in the logging camp at which plaintiff worked, or that plaintiff was ever employed by defendant, or that Swanke was ever authorized to hire men to work for de-

fendant. This motion was granted, and from a judgment for the defendant this appeal has been taken.

*F. C. Weed,* for the appellant.

For the respondent there was a brief by *Walrich, Dillett & Eberlein,* and oral argument by *C. F. Dillett.*

BARDEEN, J.  The court evidently directed a verdict for defendant on the ground that there was nothing in the case to show authority on the part of Swanke to contract on behalf of the defendant. He was president of the defendant corporation. The plaintiff and one witness testify that he hired the former to work for the defendant. These facts alone would not be sufficient to establish liability. The general rule is that the president of a corporation *ex officio* has no power to contract for the corporation. 2 Cook, Stock, § 716. Such authority may be expressly given by the articles of incorporation, or by the board of directors, or it may arise from his having assumed and exercised the power in the past. Being invested with such authority within the lines mentioned, he may enter into such contracts as pertain to the regular course of the corporate business under his direction, and no more. When he goes outside of his express or implied authority, his acts will not be binding upon the corporation. Recent cases in which there is a discussion of this question are as follows: *Ford v. Hill,* 92 Wis. 188; *McElroy v. Minn. P. H. Co.* 96 Wis. 317; *Northwestern F. Co. v. Lee,* 102 Wis. 426; *Calteaux v. Mueller,* 102 Wis. 525; *Hiawatha I. Co. v. John Strange P. Co.* 106 Wis. 111; *Heinze v. South Green Bay L. D. Co.* 109 Wis. 99.

There was no attempt in this case to show that Swanke had express authority from the board of directors. There was, however, testimony tending to show that for two years prior to the time of the contract in question he was the president and acting head of the defendant corporation. The inference is plainly justified from the testimony of Mr. Ed-

·wards that he was its managing officer when he was at home.
As such he would have the power and authority of similar
agents under like circumstances. *Roche v. Pennington,* 90
Wis. 107. From the testimony before the court the jury
·would have been justified in finding that he had authority
·to make the contract sued upon; hence a direction of a verdict
·for defendant was erroneous.

The objection that the complaint does not state a cause of
action because it is not alleged that the amount earned by
plaintiff has not been paid is not tenable. There is no pre-
sumption of payment within the period of the statute of limi-
tations. Payment is an affirmative defense, and must be set
up in the answer, or evidence of the fact will be excluded.

*By the Court.*—The judgment is reversed, and the cause is
·remanded for a new trial.

MARSHALL, J. I concur in the conclusion reached in this
·case, and with the propositions of law, in the abstract, leading
thereto, but am fearful that an idea may be read out of the
opinion of the court, not intended by the court or the writer
·of such opinion. I do not wish by this to be understood as
stating as a fact what the court did or did not intend, but·
what my individual opinion in the matter is, based on the
general trend of our decisions in previous years, some of
which are cited by the court, and in one of which the doctrine
I desire to make significant here is as well stated by my
brother BARDEEN as it can be found expressed anywhere by
this court. *Northwestern F. Co. v. Lee,* 102 Wis. 426.

The transaction, the validity of which is called in question
in this case, was a contract, made by the president of a corpo-
ration assuming to act as its general agent, which was one
of the ordinary transactions in the regular course of its cor-
porate business. The defendant was a lumber company. It
was necessarily obliged to employ laborers of the class to
which plaintiff belonged. Its president, as such, made a con-

tract, as is claimed, concerning that subject,—a simple con-
tract of hiring. There was nothing unusual either as to the
purpose or the nature of the transaction. These ideas are
expressed by the court in regard to that situation: First, the
president of the corporation did not, by virtue of his office
alone, possess power to bind the company. Second, the mere
fact that he made the contract in question as agent of the
corporation does not indicate power to do so. Third, a corpo-
ration may, by its course of business for a considerable
length of time in holding out its president as its general agent,
be bound by all his acts which fall within the implied author-
ity of such an agent. Fourth, there being evidence of such
holding out in this case, in that there was proof that the
president of the corporation, prior to the hiring in question,
for a considerable length of time had been the managing agent
thereof, the verdict should not have been directed for the de-
fendant on the ground that the evidence did not show or tend
to show that its president had power to bind the corporation.
Those propositions, though unquestionably correct, might
easily be misunderstood without some explanation to point
out the scope thereof. For instance, take the third propo-
sition, which, as will be seen, is stated in a restrictive way,
and the authorities cited to support it relate, in the main,
to the doing of acts by the president of the corporation *out-
side the ordinary business of the company,*—acts which a
general agent or manager would not have implied power to
do. There is room for one to understand that, in the making
or enforcement of a contract like the one in question—an
ordinary contract made in the course of a corporation's
ordinary daily business—a person cannot rely on the mere
fact that it is customary for the president of a corporation
to act in such matters as its general agent and that he was ap-
parently acting in that capacity in the given case; but that
he must comply with the rule which prevailed in *Ford v.
Hill,* 92 Wis. 188; *McElroy v. Minn. P. H. Co.* 96 Wis. 317;

and *Calteaux v. Mueller,* 102 Wis. 525, in each of which cases the act challenged was one that a mere general agent or manager would not have implied authority to do; further, that when the evidence shows that the president of a corporation, in a given case, was apparently acting in the capacity of general manager, without any reasonable ground for an outsider to suspect otherwise, the corporation, though *prima facie* bound by the appearance of authority, may show want of authority in fact, to the prejudice of the innocent party.

True, the president of a corporation has no power, by virtue of his office alone, to make a contract binding on his corporation, and the mere fact, in any given case, of his making the contract, would not necessarily be sufficient to disturb the effect thereof. That is an ancient doctrine. It is stated in 2 Cook, Stock, § 716, as indicated in the opinion of the court, and by substantially all the text writers that have treated the subject. Morawetz, Priv. Corp. § 537; Elliott, Priv. Corp. § 529; Thompson, Corp. § 4617. However, its effect in many jurisdictions, and in none more, as I believe, than in this state, has long since been done away with, so far as otherwise, a person dealing in good faith with the president of a corporation apparently in charge of its affairs, in respect to the ordinary business of his company, would be in danger of having the authority of such officer thereafter questioned by such company to such person's prejudice, or, so far as otherwise, a person relying on an instrument made in the name of a corporation by its president, of a class which is ordinarily so made, would primarily be obliged to produce proof of the authority of the president to act in the given case or cases of like character. The doctrine is just as forceful as ever between the corporation and its president, but has been limited by the doctrine of estoppel so far as otherwise it might be used to the prejudice of an innocent person, by the same wise judicial policy that now precludes a corporation from pleading *ultra vires* where it would be thus used merely as

an instrument to enable the pleader to perpetrate a fraud (*John V. Farwell Co. v. Wolf,* 96 Wis. 10; *Zinc Carbonate Co. v. First Nat. Bank,* 103 Wis. 125), and the same policy that treats as obsolete the rule that a corporation can contract only by deed under its corporate seal. A person who finds the president of a corporation apparently in charge of its business, or assuming to have the right to act as its general agent, there being nothing to put him on guard to the contrary, may freely and safely deal with such officer in respect to the ordinary business of the corporation—business which, by common usage, is managed in that way—on the assumption that the officer possesses the power of a general agent. The custom is so general for such an officer to exercise such power, that the character given to him by the corporation, by making him its president, is a sufficient holding out on its part, nothing appearing to the contrary, to impliedly give him the requisite authority. That principle alone would not have been sufficient to sustain the cause of action in *Ford v. Hill,* 92 Wis. 188, or that in any of the kindred cases that might be referred to, because the act challenged in each of such cases, as before indicated, was not within the power of a general agent or manager to perform.

All the text writers recognize the modern rule, some giving it more significance than others, acording to individual notions as to what is the better rule. 2 Cook, Stock, § 716, and notes, *et seq.,* gives far more force to the old rule than many other modern writers. He seems not to have discovered that there has been any radical departure from its ancient rigor, except, possibly, in the state of Illinois. He even casts doubt upon any such departure there. How he could reach that conclusion, in view of the many states where the views here expressed prevail, is not perceived. His suggestion, however, that it may possibly be said that Illinois no longer holds to the ancient doctrine, should not be overlooked,

in view of the fact that the decisions of that state, on some important phases of the subject, have been quoted by this court as worthy to be followed, and have been followed. *Ford v. Hill, supra.*

In 4 Thompson, Corp, § 4617, the author recognizes the existence of the two opposing theories on the subject under discussion, and that the one which we call the modern and more reasonable theory has · quite as much support in the books, probably more in the decisions of recent years, than the other. The author admits that the popular, almost universal, idea is that the president of a corporation may be safely presumed to have the powers of a general manager. He pleads guilty to having supposed the authorities were all in accord therewith before he carefully investigated them, but says that, upon such investigation being made, he discovered two well-defined and supported theories. He deduced from the authorities supporting the more modern doctrine the following rule:

"The law ascribes to the president of a business corporation the authority of its general agent for the purpose of binding it by contracts made within the ordinary scope of its business, and in the absence of notice to the contrary, persons dealing with the corporation may safely act upon that assumption. To use an everyday illustration, let us suppose that a corporation is formed to deal in a certain article of commerce. Any member of the public can safely act upon the assumption that the president of the corporation is authorized to make sales for the corporation of that article in the ordinary course of its business, and no resolution of its directors conferring such authority need be shown."

We will supplement the above quotation by reference to some of the leading cases supporting it. In *Ceeder v. H. M. Loud & Sons L. Co.* 86 Mich. 541, the circumstances were very much like those in this case. The contract was made with the president of the corporation acting, apparently, as manager of its business. It was clearly within the scope of the powers of a managing agent. The court held that the

president, as matter of law, possessed implied power to bind his corporation in the matter. In *Moser v. Kreigh,* 49 Ill. 84, the validity of an undertaking made by the president of a corporation as its act, the instrument being one required in the usual and ordinary course of its business, was questioned. The court held that, there being no evidence to the contrary, it would be presumed that he possessed authority to make the paper. In *Sparks v. Dispatch T. Co.* 104 Mo. 531, speaking on the same subject, the court took the advanced ground indicated by the following language there used:

"The president of a business corporation is its chief executive officer. He may, without any special authority from the board of directors, perform all acts of an ordinary nature, which, by usage or necessity, are incident to his office, and may bind the corporation by contracts in matters arising in the usual course of business."

In *Smith v. Smith,* 62 Ill. 493, the court said, in substance, that corporate business is ordinarily managed by the president of the company; that he is the legal head of the body; that when an act pertaining to the ordinary business of the company is performed by him, the presumption will be indulged in that the act is legally done and is binding upon that body. To the same effect are the decisions of the highest court in New York. There, an instrument, purporting to be the act of a corporation acting through its president, in the absence of evidence to the contrary, is presumed to be a corporate act. *Patterson v. Robinson,* 116 N. Y. 193; *Chemical Nat. Bank v. Kohner,* 85 N. Y. 189. In *Richmond, F. & P. R. Co. v. Snead,* 19 Grat. 354, it was held that by general usage the president of a railway corporation possesses implied power to make contracts in the lawful, necessary, ordinary business of the company. In *State Nat. Bank v. Union Nat. Bank,* 168 Ill. 519, this language was used:

"The rule seems to be well established in this state that the ordinary affairs of a corporation, such as custom has im-

posed upon or necessity requires of the president of a corpo-
ration, may be performed by him without express authority.
Under this rule the president of the corporation no doubt had
power to   .   .   .   make all contracts necessary in the trans-
action of its business."

From the foregoing it will be plainly seen that there is no
want of authority for the proposition that in modern business
life the general custom is to intrust to presidents of corpora-
tions the powers of a general agent, and that sound judicial
policy requires the court to recognize that situation by hold-
ing that, in the absence of evidence to the contrary, brought
home to the person affected, the act of a corporation in cloth-
ing one of its members with the office of president, proclaims
him to the world as its general agent, with all the incidentally
implied power; that a person, in dealing with such an officer,
within the scope of said power, need not stand in fear of los-
ing the benefits of his contract because he may not be able
to show that such officer had express authority to act in the
matter, nor that he may be obliged, in order to protect his
rights, to show those significant circumstances necessary to
create an estoppel against the corporation within the rule of
*Ford v. Hill,* 92 Wis. 188, and kindred cases. Courts, in order
to efficiently perform their legitimate functions, must necessa-
rily realize that we are living under entirely new conditions,
compared with those of a bygone age when the ancient doc-
trine, that the president of a corporation has no power by
mere implication, was in force. We are required to deal
with corporations, as represented by their presidents, very
much as we do with individuals. In our busy life we do
that day by day, at every turn, in all sorts of transactions.
The necessities of modern activity render the rule we have dis-
cussed absolutely essential to freedom and safety in business
transactions. Judicial policy must be adapted to this mod-
ern condition. With some modifications to suit our method
of creating corporate bodies, the language of COULTER, J.,

in *Steamboat Co. v. McCutcheon,* 13 Pa. St. 13, may well be applied to the situation in our own state:

"Who, then, was the proper person to make the contract? Certainly, the president. We must bear in mind that these kind of artificial men, or persons, are becoming very common in this state. The legislature turns them out, almost as rapidly as a miller does his grist. They compose a new element, or ingredient, of modern society. They contract with everybody, and about all manner of things; and they can contract by their chief officers; and such is their usual course of business. The president of a company presents himself to make a contract, evidently connected with the business. He declares the object and purpose of the contract. Who doubts him? We are a dealing people. Is he asked to produce the books of the company to show that he is authorized to make the contract *secundum artem?* Such is not the custom. Society must be protected from mischief, arising from the multiplication of these bodies. As they can only contract by their officers, the declarations of those officers, when engaged in the business of the company, like the declarations of an agent within the scope of his authority, or the declarations of an individual engaged in his own business, are evidence against their principals."

We indorse, heartily, all said in the foregoing quotation. The court is committed to it in letter and spirit in the cases cited in the opinion of the court, and others on the same subject; also in the numerous decisions to the effect that, as against an innocent person who would otherwise be prejudiced, a corporation will be bound by its contracts regardless of the doctrine of *ultra vires;* and in many other cases where ancient rules might otherwise be invoked by corporations to the prejudice of innocent persons to enable the corporation to perpetrate fraud. In a very recent case, *Marvin v. Anderson,* 111 Wis. 387, this court applied the doctrine that where a paper purports to have been executed by the president and secretary of a corporation, it will be presumed that they possessed power to do so. A large collection of cases will be found cited in the opinion on the general subject of the im-

plied powers of corporate officers who, according to custom,
act as the agents of corporations. In *Bullen v. Milwaukee T.
Co.* 109 Wis. 41, 44, this language was used with the ap-
proval of the court, on the strength of the cases cited in the
opinion:

"The idea that every time a person deals with an officer
of a corporation, or person assuming to act in his behalf, he
must under all circumstances take his chances on whether
such officer or person has been specially authorized in regard
to the matter, has no place in the law in our day. Proof of ap-
parent authority of a corporate officer to contract in its be-
half *prima facie* establishes actual authority so to do, and
evidence of want of such authority will not relieve the cor-
poration from the burden of a contract made with reasonable
reliance upon such apparent authority, if such corporation is
responsible for such appearance."

Nothing has been said which is intended to militate against
the idea that the president of a corporation does not, by vir-
tue of his office alone, possess power to bind his company by
contract. However, he may, by virtue thereof and the cus-
tom known to all men that such an officer is generally in-
trusted with the powers of a general agent for his company,
exercise such power as between the corporation and the pub-
lic, especially when he is actually conducting, to all appear-
ances, the business of the corporation. Thus the ancient rule
is preserved in all its integrity as between the corporation
and its president; but by applying the doctrine of estoppel
by holding out, as between the corporation and the innocent
public, as regards the powers of the president, a convenient
and efficient way is found to adapt an old rule to new condi-
tions, preserving its efficiency where that is essential, and
guarding against innumerable embarrassments and mischiefs
which would flow from holding to its ancient effect as be-
tween the corporation and outsiders.

It follows in any view that proof that the president of the
defendant, acting as such, contracted with the plaintiff, and

that the contract was within the ordinary scope of the powers of a managing agent of the corporation, was sufficient to bind the corporation as a matter of law.