BOLICK, Respondent, vs. GALLAGHER and others, Appellants.

*December 7, 1954—January 11, 1955.*

422

For the appellants there was a brief by *Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *W. L. Jackman.*

For the respondent there was a brief by *Arthur, Dewa, Nestingen & Tomlinson* of Madison, and oral argument by *Ivan A. Nestingen.*

STEINLE, J.   In the first cause of action the plaintiff alleges that following an automobile accident his wife was admitted to a hospital suffering from a broken neck and that she was placed under the care of the defendants who are physicians, and who were negligent in failing to diagnose and treat her condition so that death ensued as a result thereof. In the second and third causes of action such claim of negligence is repeated. Under the first and second causes of action the husband seeks to recover damages for the pecuniary loss to himself and for loss of society and companionship, respectively. In the third cause of action the husband, as representative of the wife's estate, seeks damages for pain and suffering to the wife and for expenses incurred. In the amended answer there is separate denial as to negligence and damages with respect to each of the causes of action asserted in the complaint. An affirmative defense is set forth to which the plaintiff interposed demurrer on ground that it appears that the purported defense does not state facts sufficient to constitute a defense. Demurrers concede the truth of material statements of fact, *Mitchell v. Horicon* (1953), 264 Wis. 350, 59 N. W. (2d) 469. The affirmative defense separately stated is as follows:

"IV.  For an Affirmative Defense

"And for a further defense to the claims of plaintiff asserted in the complaint and each cause of action therein set forth, defendants allege as follows:

"11. That Mathilda M. Bolick was injured on October 16, 1951, when a car which she was driving was struck by a car driven by Homer Pfanku. At the time and place of said accident Homer Pfanku was negligent in the manner in which he drove his car and his negligence was a proximate

cause of the injuries to Mathilda M. Bolick. In order to receive medical care for said injuries Mathilda M. Bolick was admitted to Methodist Hospital, Madison, Wisconsin, on said day, for treatment and was examined and treated by defendant John T. F. Gallagher, and she was also at a later time treated by defendant Robert A. Straughn. That Mathilda M. Bolick died intestate on October 24, 1951, as a proximate result of the injuries received by her on October 16, 1951, as the result of said collision above described.

"12. That on or about December 20, 1951, plaintiff Robert Bolick commenced an action, in circuit court for Dane county, against Homer Pfanku and Cheese Makers Mutual Casualty Company, which insured Homer Pfanku against liability imposed by law upon him, to recover, as surviving spouse of Mathilda M. Bolick damages for the wrongful death of Mathilda M. Bolick, said plaintiff claiming in his complaint in said action that Homer Pfanku was negligent and that his negligence was a proximate cause of the death of Mathilda M. Bolick and the damage resulting to him therefrom.

"13. That on or about December 20, 1951, Robert Bolick, as special administrator of the estate of Mathilda M. Bolick, deceased, commenced an action, in circuit court for Dane county, against Homer Pfanku and Cheese Makers Mutual Casualty Company, to recover damages for personal injuries, pain and suffering of Mathilda M. Bolick, said plaintiff as said special administrator claiming in his complaint that the personal injuries, pain and suffering of Mathilda M. Bolick suffered by her in said accident and until her death were proximately caused by the negligence of Homer Pfanku at the time and place of said collision.

"14. Thereafter and on November 25, 1952, Robert Bolick in his individual capacity for the consideration of $3,362 paid by Cheese Makers Mutual Casualty Company to Robert Bolick executed a release, a photostatic copy of which is hereto attached, marked Exhibit A, and incorporated herein by reference. On said date Robert Bolick as special administrator of the estate of Mathilda M. Bolick, deceased, for the consideration of $4,238 paid by Cheese Makers Mutual Casualty Company to Robert Bolick as special administrator of the estate of Mathilda M. Bolick, deceased,

executed a release, a photostatic copy of which is hereto attached, marked Exhibit B, and incorporated herein by reference.

"15. Thereafter on November 26, 1952, the parties to said actions entered into stipulations, copies of which are hereto attached and marked Exhibits C and D, respectively, and the court upon said stipulations entered orders, copies of which are hereto attached, marked Exhibits E and F, respectively, and said Exhibits C, D, E, and F are incorporated herein by reference.

"16. That in the action commenced by Robert Bolick for his own account, against Homer Pfanku and Cheese Makers Mutual Casualty Company he claimed that his own damages and personal injuries and medical expense, as a result of the said automobile accident, resulted in damage to him of $253.28, and that by reason of the death of Mathilda M. Bolick, his wife, he suffered $15,750 pecuniary loss and $2,500 for the loss of her society and companionship.

"17. That in the action commenced by Robert Bolick, as special administrator of the estate of Mathilda M. Bolick, deceased, against Homer Pfanku, plaintiff claimed damages on behalf of said estate as follows: For pain and suffering of Mathilda M. Bolick between the time of said accident and her death, $5,000; for medical expense for her care, treatment, and nursing, $1,226.60; for her funeral expenses and burial lot, $100; for damage to her car, $75; and for her loss of wages following the accident and prior to her death $36.40; a total of $6,938 [$6,438?].

"18. That the receipt of the said moneys paid by Cheese Makers Mutual Casualty Company constituted a satisfaction in whole or in part of the damages suffered by Robert Bolick and estate of Mathilda M. Bolick resulting from her injury and death, and defendants, in the event plaintiff is entitled to recover from defendants or either of them, are entitled to credit on any damages found against them to the extent of the amounts paid by Cheese Makers Mutual Casualty Company."

Sec. 263.13, Stats., provides that a defendant may answer a complaint not only by interposing specific denial of each material allegation contained therein, but may also set forth

new matter constituting a defense. In the affirmative defense the defendants allege that in the event that they are held to be liable for the injuries and death of the plaintiff's wife, they will become entitled to a credit on damages found against them to the extent of the amount paid on behalf of Pfanku. It appears that by such allegation, the defendants plead payment in part at least for damages that may be assessed against them. Payment is an affirmative defense and must be pleaded, or evidence of the fact will be excluded. *Meating v. Tigerton Lumber Co.* (1902), 113 Wis. 379, 89 N. W. 152.

The plaintiff contends that under the allegations of the complaint he seeks recovery for damages for the negligent acts caused only by the defendants, and that the amounts received from Pfanku and his insurer for the releases cover only the damages for which Pfanku might have been held liable, and that hence the allegations in the affirmative defense are irrelevant to the claims set forth in the complaint. Obviously, this position is predicated upon a theory that the injury sustained by the plaintiff's wife in the automobile accident was entirely separate and distinct from that caused by the defendants. Under the pleadings Pfanku and the defendant physicians are not joint tort-feasors, but they are consecutive or successive tort-feasors. *Fisher v. Milwaukee E. R. & L. Co.* (1920), 173 Wis. 57, 180 N. W. 269. In many cases it is possible to separate injuries caused to a person by the negligence of consecutive tort-feasors. However, it is conceivable that injuries caused to a person by the negligence of consecutive tort-feasors may be impossible of division or separation. For instance, there are no degrees of death, and more than one consecutive tort-feasor may contribute to a death which is but a single injury. Pain and suffering may be single and indivisible although caused through the negligence of more than one consecutive tort-feasor.

It is an elementary principle that where independent torts result in separate injuries, each tort-feasor is separately liable for his own torts. 86 C. J. S., Torts, p. 951, sec. 35; 52 Am. Jur., Torts, pp. 453, 454, sec. 112. If upon the trial it is determined that the injuries or part of them were divisible, i. e., capable of being separated, then clearly each of the respective tort-feasors will be liable only for damages for such separate injuries caused by them respectively. However, it is also an established principle that where independent torts concur to inflict a single injury, each tort-feasor is liable for the entire damage. 86 C. J. S., Torts, p. 951, sec. 35. Under this rule were it to be determined upon the trial that any injury sustained by the wife was indivisible, and that both Pfanku and the defendant physicians as consecutive tort-feasors contributed to the single injury, the liability would be joint and several, and each would be responsible for the entire amount of the damages resulting from the single injury. In the event that upon the trial it shall be determined that any of the injuries sustained by the wife were single and indivisible and that the negligence of both Pfanku and the defendant physicians contributed thereto, then the payment heretofore made by Pfanku and his insurer to the plaintiff will inure to the benefit of the defendants for the same damages cause by both.

It is considered that the defendants in their affirmative defense do not plead evidence but ultimate fact of payment. Whether they shall become entitled to credit for payments made under the releases depends upon findings made at the trial with reference to the principles discussed herein. Manifestly, the items concerning payment heretofore made are only for the consideration of the court in its rendition of the judgment. They are not admissible before the jury.

*By the Court.*—Judgment reversed, with directions to the trial court to enter an order overruling the demurrer to the affirmative defense upon terms to be fixed by the trial court.

CURRIE, J. (*concurring*). Wisconsin follows the general rule that an original tort-feasor whose negligence causes injury to another may be held liable for any enhancement of the original injury due to negligence or mistaken treatment on the part of the physician in whose medical care the injured person may have been placed. *Hooyman v. Reeve* (1919), 168 Wis. 420, 170 N. W. 282. The two releases executed by the plaintiff to Pfanku and his insurance carrier released all claims of the plaintiff for the injuries, pain and suffering, and death of plaintiff's wife which resulted from the accident. These releases, therefore, under the authority of *Hooyman v. Reeve, supra,* released any claim the plaintiff might have had against Pfanku and his insurance carrier for the enhancement of plaintiff's injuries as the result of alleged malpractice, as well as for the original injuries caused by Pfanku and the pain and suffering endured before the defendant physicians assumed the medical care of plaintiff's wife.

As pointed out in the court's opinion herein, Pfanku and the defendant physicians are not joint tort-feasors but consecutive tort-feasors. Nevertheless, as to part of plaintiff's damages there may be joint liability, and this is regardless of whether the damages caused by Pfanku, as distinguished from those resulting from the alleged malpractice, are capable of separate ascertainment or are indivisible. This joint liability extends to any damages which may have been caused by the defendant physicians' act of malpractice in enhancing the original injuries sustained as the result of Pfanku's alleged negligence because of the fact that Pfanku, as well as the defendant physicians, is liable for the same.

If any of the two amounts of money paid to plaintiff as consideration for the two releases covered damages arising in this field of joint liability, then, as to such, the defendant physicians are entitled to have such amounts credited upon any damages awarded by the jury against them. Applying equitable principles, the amounts so received by plaintiff in

consideration for the two releases should be applied first against any damages for which Pfanku alone may have been responsible, and the excess only applied against the damages lying within the sphere of joint liability.

I, therefore, concur in the determination that it was error for the trial court to have sustained the demurrer.

FAIRCHILD, C. J. (*dissenting*). Inconsistent defenses may be pleaded, but each so-called separate defense must allege facts which constitute a separate defense of the defendant against the cause of action presented by the plaintiff.

A demurrer to a separate defense admits all the facts therein well pleaded, but it does not admit erroneous conclusions drawn from such facts by the pleader even though the conclusions bear the semblance of statements of fact.

The proposed defense we are considering does not set forth the necessary fact to show a right in the defendants to be excused from liability arising from plaintiff's claim of malpractice against the defendants. In *Papenfus v. Shell Oil Co.* 254 Wis. 233, 239, 35 N. W. (2d) 920, it was said: "In a long line of decisions this court has held that payments voluntarily made to an injured person inure to his benefit and not to the benefit of a tort-feasor whose wrongful act caused the injury." And in the same case it was said: "While under the law of accord and satisfaction a settlement with one joint tort-feasor bars recovery against all other tort-feasors for the same cause, the granting of a covenant not to sue does not have such effect."

What is pleaded here as a separate defense is nothing more than a recital of evidence which might be relative and material if the defendants were joint tort-feasors with the individual whose act might have been negligent and resulted in injury bringing the plaintiff's wife into the charge of defendants. The defendants do not put forth in their pleading any such relation to one who has bought his peace which

entitles them to a credit on damages for which they are solely responsible if responsible at all. They have paid nothing, and they do not claim to be joint tort-feasors or "consecutive tort-feasors." The stage reached in the proceedings so far as this separate defense is concerned is not one where it is timely to pass upon the relevancy and materiality of evidence which, under sufficient pleading, may or may not be admissible. There is, of course, an essential difference between matters of pleading and matters of evidence. The ruling at the circuit sustaining the demurrer should be affirmed.