Sigman and another, Respondents, v. General Drivers &
Dairy Employees Union, Local 563, Appellants.

*September 8—October 7, 1958.*

For the appellants there were briefs by *Cain & Herrling* of Appleton, attorneys, and *Henry P. Hughes* of Oshkosh of counsel, and oral argument by *Mr. Hughes*.

For the respondents there was a brief by *Bradford & Gabert* of Appleton, and oral argument by *Alfred S. Bradford*.

BROADFOOT, J.  After the case was called for trial but before any testimony was offered, a conference was held by the court and the attorneys for the parties in the absence of the jury.  Mr. Cain was representing the defendants.  The following appears in the record as a portion of what transpired at the conference:

"The Court: Incidentally, that was indicated at the pre-trial conference in this case, that there are mixed questions of law and fact in this case.  The fact questions seem to be these: Whether the local union entered into a contract with Mr. Sigman for his employment at a stipulated fee.  If the jury should find that no such contract was executed between the local and Mr. Sigman, then the question of fact which remains for the jury, in my opinion, is what was the reasonable value of the services rendered by Mr. Sigman to the local? Those seem to me the only issues of fact which can come out of this lawsuit.

"Other than that we have the legal questions as to whether or not, if a contract was made by the local with Mr. Sigman, did it have authority to do so?—which, clearly, is a question of law.  If there was no contract entered into between the local union and Mr. Sigman, then is he entitled to reimbursement for his fees on a *quantum meruit* basis?—which is also a question of law.

"Now I think we ought to do this: We ought to handle this jury in such a way as to bring out the issues which they may have to decide.  Then continue to present the legal propositions that we think should be presented in whatever form and shape you think they should be presented.

"Now that means that there will be a combination of facts and law.  I would allow you to put in whatever proof you think should be presented on the fact questions, and then be less particular about the facts you want to put in as far as the law is concerned.

"Does that make sense to both of you or to either one of you?

"Mr. Cain: It does."

So far as the answers of the jury to the questions in the special verdict are concerned, there was ample credible evidence to sustain the same. The verdict on the issues of fact, therefore, will have to be approved unless, as is alleged by the defendants, prejudicial error was committed during the progress of the trial. Both Mr. Sigman and the officers of the local testified to the making of the contract and their testimony is not disputed.

The matters of law to be determined by the trial court presented more-difficult questions. The correctness of its determination must be viewed in the light of the facts presented in the record.

Embraced in the membership of the local were approximately 1,200 members employed by various employers in several cities. Originally there were two or more unions which were merged into Local 563. For approximately ten years George Behling had been secretary-treasurer and business agent of the local. For about five years prior thereto he had held the same offices in Local 306 located at Menasha until it merged with Local 563.

Prior to April 21, 1954, the officers of the local were Robert Schlieve, president, George Behling, secretary-treasurer, Gerald Dimler, recording secretary; and the officers, with Otto Berman, Leonard Rice, and Fred Krahn, constituted the executive board. There was a vacancy in the office of vice-president. Schlieve, Dimler, and Berman had been appointed by the executive board to fill vacancies in their respective offices.

Early in 1954, Behling took the position that new elections were required for the offices held by Schlieve, Dimler, and Berman. They disagreed. On April 21, 1954, Behling addressed letters to Schlieve, Dimler, and Berman notifying them that they had been improperly serving in their official capacities since January, 1954, and they were notified they could no longer act in their official capacities.

On May 2, 1954, Schlieve, Dimler, and Berman, together with Leonard Rice, a member of the executive board of the local, wrote a letter to Mr. O'Brien, the vice-president of the international at Chicago, reporting what had transpired and requesting that a representative of the international meet with them.

In the meantime an election committee was directed to hold elections. It is not clear from the record, but apparently the election committee was appointed by Behling. The elections were held at the different cities where union members worked and resided. The election committee attended regional meetings at seven different places on different dates. The newly elected officers, William Hietpas, president, Myron Bartelt, recording secretary, and a new board of trustees were installed on June 14, 1954.

During the first week in May the defendant Sark, at the direction of Mr. O'Brien, went to Appleton where he met with Schlieve, Dimler, Berman, and Rice. Thereafter a second meeting was held with the same persons plus Behling and Krahn. Sark filed a report with Mr. O'Brien May 6, 1954, outlining what had been reported to him at the meetings. He and a Mr. Farrell, also an employee of the international, made other trips and further investigation at Appleton.

Soon after the new officers took over in June of 1954, Hietpas and Behling contracted Mr. Sigman at his office and retained him to resist any attempt on the part of the international to impose a trusteeship upon the local. On July 25th, Sark appeared at the offices of the local and took charge of its office, records, and property as a cotrustee with O'Brien and claimed to have been appointed as such by the president of the international.

On June 26, 1954, Sigman, on behalf of the local, commenced an action in the municipal court of Outagamie county, claiming that the actions of the international violated

the constitution of the international in several respects and praying for an injunction restraining the international, O'Brien, Sark, and Schlieve, who had been appointed by Sark as a local representative of the international, from in anyway interfering with the conduct of the local and its officers. Upon the verified complaint a temporary restraining order was issued by the municipal judge, restraining the defendants from interfering with the local and its officers and directing them to return to the local and its officers all of the books and property they had taken over.

On August 2, 1954, the temporary restraining order was modified in that Behling was restrained from doing certain acts but he was permitted therein to write checks payable for salaries, including his own, and it was stated that he was not restrained from paying for legal services incurred by said Local 563 and its elected officers in the defense of its property, and costs. On the next day the executive board authorized the payment of $1,000 to Sigman to be applied upon his total bill.

The issues in that action were vigorously contested in the municipal court over a period of many days. Throughout the trial Sigman appeared for the local. On October 4th the municipal judge dissolved the temporary restraining order but left the question of the issuance of a permanent injunction for further proceedings. That matter has not yet been tried and determined.

The defendants in this action contended throughout the trial that Behling and the new officers, including Hietpas, had no authority to enter into a contract with Sigman; that they were not elected as officers because the election had been conducted in an improper manner.

The trial court determined that Behling had been duly elected as secretary-treasurer, was so acting when he negotiated the contract with Sigman, and that the other officers and executive board, if not *de jure* officers, were *de facto*

officers acting under color of an election, and that as such they were clothed with the same rights and duties as legal officers. The trial court further determined as a matter of law that both Behling and Hietpas had authority to employ counsel to represent the local, citing as authority *Heinze v. South Green Bay Land & Dock Co.* 109 Wis. 99, 85 N. W. 145, and *Central Shorewood Building Corp. v. Saltzstein,* 245 Wis. 138, 13 N. W. (2d) 525.

The appellants contend that prejudicial error was committed by the trial judge during the conduct of the trial. It is contended that the trial court improperly excluded evidence offered by the defendants, in admitting evidence offered by the plaintiffs over objection by the defendants, and in its conduct and remarks in the presence of the jury. We have carefully reviewed the record and can find no such error.

The alleged errors on the part of the trial court were occasioned by the fact that defendants' counsel did not wish to be bound by the agreement as to the method and order of the presentation of the case that was entered into at the commencement of the trial. He continually attempted to introduce evidence as to the legal issues before the jury.

The defendants attempted to introduce evidence of the elections, as to the authority of the officers to enter into a contract and to present issues that had been tried in the municipal court. The trial court excluded testimony on such subjects as not being within the issues of fact to be determined by the jury and intimated that after the jury had retired the defendants could then introduce such testimony. The court had difficulty in persuading the defendants to stick to the jury issues in that portion of the trial. We have found no prejudicial error in the manner in which the trial court conducted that portion of the trial.

The defendants further complain that the court erred in refusing to submit to the jury the question of the authority

of William Hietpas and George Behling to act for the local at the time of the hiring of the plaintiffs. It is unnecessary for us to determine whether that question involved an issue of fact or an issue of law in view of the agreement at the beginning of the trial that it be determined by the court.

A fourth question was submitted to the jury to be answered only in case question No. 1 was answered in the negative. That question was as follows:

"If you answer question No. 1 'No,' then answer this question:
"What sum of money will reasonably compensate Samuel Sigman for the legal services he rendered to the General Drivers & Dairy Employees Union Local 563 between the dates of July 19, 1954, and the 17th day of September, 1954?"

Defendants objected to the submission of that question and now contend that the question assumed that Sigman did perform legal services for the local and that it further indicated that the trial court had determined the question prematurely and by the question indicated its decision thereon by the wording of that question. The jury did not answer question No. 4 as it was not necessary in view of its prior answers. Had the jury reached that question, its answer would have been subject to the determination of the court on the issues of law. Under the circumstances we find no prejudicial error in the submission of the question.

Finding No. 6 by the trial court was as follows:

"That the following officers of Local 563 were elected in the spring of 1954 and held their respective offices on June 15th, 1954: William Hietpas, president; William McGoey, vice-president; Myron Bartelt, recording secretary; Eugene Wolf, trustee."

The defendants challenge that finding on the ground that there was no evidence to support it. It is their contention that the entire election was neither duly called nor duly held,

and that this must have been known by Mr. Sigman. There is no proof in the record that the election should have been conducted in any other manner. In fact, with the membership scattered in several cities it would seem that that might be the most-appropriate method of conducting an election as it would be likely to produce the votes of more members than would an election held in one city only. The record discloses that an election was held. There is some evidence that custom was followed in the method of conducting the election, and the trial court was justified in making the finding. In any event, the old officers surrendered their positions after notification and made no attempt to exercise the functions of their respective offices except as individuals to report the matter to the international. Further there is no proof in the record that Sigman knew how and when the election was conducted or that he knew there was any contest thereof. In fact, the records do not disclose that any contest was ever filed. Under the circumstances the finding was correct and the trial court was justified in holding that the officers mentioned in the finding were at least *de facto* officers.

We have reviewed all of the assignments of error based upon the trial of the issues of fact before the jury and can find no prejudicial error therein. As to the issues of law, the record supports the findings of the trial court and its conclusions of law must be affirmed.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.