St. CLAIR, Appellant, vs. RUTLEDGE, Respondent.

115	583
115	⁴582
116	²140

*October 24—November 11, 1902.*

*Corporations: Contracts: Authority of officers: Estoppel: Evidence: Seal: Signature by president without official title: Conveyance of land: Waiver of right to forfeiture.*

1. The president of a corporation does not, by virtue of his office, possess authority to bind his company by contract.
2. A corporation can only contract by authority of its board of directors in the absence of extraordinary powers given to some officer to so bind it, by some general or special law of the corporation; but such authority, as regards the public, may be either expressly or impliedly given.
3. A person who contracts with the president of a corporation pretending to act in its behalf is bound to know the extent of his powers; but this must be taken in connection with counter-

vailing rules rendering it dormant where otherwise injustice would be done.

4. Authority may be vested in the president of a corporation to bind it by contract, though no authority in that regard be given to him by any affirmative act of its board of directors, or any act at all intending to confer such authority, it being subject to be bound by the appearance of authority for which it is responsible, the same as a natural person.

5. A corporation is estopped from denying in any particular instance that its president has the power which it has customarily allowed him to exercise in the face of the public.

6. What will effectively evidence authority of the president of a corporation to bind it by contract must be considered with reference to the circumstance that such officer, for his corporation, generally exercises the power of a general agent.

7. The fact that the directors of a corporation, for a long period of time, neglect to hold meetings and exercise their functions as its managing officers, during which time its president is apparently permitted to carry on the corporate business without objection by them or any of them, is sufficient to warrant the conclusion as a fact, as regards innocent third persons, that such president has been duly authorized by such directors to do such business, and without reference to what the actual fact is as between such corporation and such president.

8. As regards the validity of a contract made by the president of a corporation as its act, he is generally presumed to have been duly authorized under some judicial rule, where otherwise injustice would be done. As an illustration of that, in a matter within the ordinary scope of the business of a corporation, one may safely contract with its president if he is customarily found in charge of such business, assuming that he has been duly authorized to act as its agent, such person not knowing that such officer does not possess such power in fact. In such circumstances the official character does not indicate a limitation of power to the mere *ex officio* authority. It rather tends to give color to the president's status as that of a general agent for his company, in addition to being the president.

9. The president of a corporation, being in apparent charge of its affairs as a general agent, having sold the timber on its lands, giving several years' time to cut and remove the same, the vendee not knowing of his possessing authority in the matter except by appearance, in that he has been permitted for a considerable length of time to conduct the corporate business, and the corporation having treated such particular act as binding and appropriated the consideration paid, largely for distribu-

tion among its members, and without any formal action in the matter by the directors so far as known to the vendee, and the president having continued thereafter to manage the corporate business for several years, apparently with the approval of its board of directors, and, while appearances were as indicated, for a consideration moving to the corporation, extended the time for the vendee to cut and remove the timber,—*held*, that the circumstances warranted a finding of fact that the corporation was guilty of having clothed its president with apparent authority to grant such extension, and a conclusion of law that it was estopped from changing such apparent position to the prejudice of such vendee.

10. The written evidence of a corporate contract need not be sealed with the corporate seal or signed by the secretary of the corporation in order to give it validity, unless it be one required by some statute to be so sealed and signed.

11. If the president of a corporation, authorized actually or constructively to bind it by contract, signs a written agreement with the name of the corporation, by himself, intending to bind it, the inadvertent omission by him of the title of his office in the signature will not affect the validity of the paper.

12. The waiver of the right to forfeit to the corporation the title to real property is not a conveyance of such property, and is not required by law to be effected by a writing under the seal of the corporation, signed by its president and secretary.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Eau Claire county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

Action to quiet title. The complaint is in the usual form. Defendant pleaded title to the timber upon the land and an interest under a tax deed. The court, upon the evidence, found, on matters material to this appeal, in substance as follows:

(1) October 12, 1893, and prior thereto and thereafter till the conveyance to plaintiff, the Peerless Iron & Land Company, a corporation, owned the lands in dispute, except as affected by transactions with defendant hereafter mentioned.

(2) The corporation was organized in 1886, principally for the purpose of dealing in mineral lands and mining properties, prospecting and exploring for minerals, iron and other

ores, mining, smelting, and manufacturing minerals, granting and acquiring mining options and leases, and platting lands.

(3) By the articles of organization the president, in conjunction with the secretary, was empowered to make conveyances, contracts and agreements as directed by the board of directors, and perform such other duties as might be prescribed by the by-laws, and have general charge and supervisory control of the business and affairs of the company under and subject to the authority of the board of directors.

(4) No by-law was passed or direction given to the president in regard to the transaction with the defendant hereafter mentioned, prior to the occurrence thereof.

(5) The entire capital stock of the corporation was paid by a conveyance to it of certain lands.

(6) C. T. Bowen was president of the corporation from August, 1886, to the spring of 1899.

(7) From October 12, 1893, the president as such sold to defendant the pine, spruce and tamarack timber, twelve inches or more in diameter at the stump, on the lands in question, with the privilege to cut and remove the same at any time before June 1, 1899, the timber then remaining to revert to the corporation, the sale being made by a writing signed by the president and the secretary.

(8) November 1, 1893, the board of directors first acted in reference to the sale to defendant, at which time they ratified the same by a motion in the following words:

"On motion the president and secretary were authorized and empowered to make sale of the pine on Peerless land in town 43—3 east in Ashland county, Wisconsin, and all contracts heretofore made by them in reference to such sale were ratified and confirmed."

(9) Defendant did not know of such action till after the commencement of this action. From the time he purchased the timber he performed the condition imposed upon him in

regard to the land to pay one half of the taxes on the land during the existence of his interest in the timber.

(10) When said sale was made the corporation had no money with which to do business or pay the taxes upon its lands. The money received upon the sale was used, so far as necessary, to pay back taxes on the lands, and the balance was divided between the stockholders.

(11) The taxes on the land, except one half paid by defendant, were allowed to go delinquent from 1894 to 1900, during which time defendant obtained a tax deed on one half interest in some of the land, which deed, however, is admitted to be void.

(12) From about the year 1892 no business of any kind was done by the corporation. It in fact abandoned the purposes of its organization except as the same was attended to by the president, Mr. Bowen, all of whose acts were tacitly assented to by the corporation during such time. Shortly before March 28, 1896, defendant applied to the corporation, by letter addressed to its president, for an extension of time to June 1, 1902, to remove the timber from the land, upon condition of his continuing to pay one half of the taxes until the timber should be removed.

(13) Bowen, acting as president, with the acquiescence of one or more of the other directors, assented to such request, and by a writing extended the privilege to remove the timber till June 1, 1902. The extension was signed in the following form: "Peerless Iron & Land Company, by C. T. Bowen," though Mr. Bowen in fact acted as president of the corporation in so signing the extension, the neglect to add the title, "President," being a mere inadvertence.

(14) Had defendant not obtained the extension he would have removed the timber within the time allowed by his agreement with the corporation as it was originally made. He omitted to do so, relying on the extension referred to.

(15) November 20, 1899, the corporation conveyed the lands in question by quitclaim deed to plaintiff for the sum of $750, he then having full knowledge of the transactions of Mr. Bowen, as president of the corporation, with defendant.

(16) The corporation never in any way repudiated Bowen's transaction with defendant except by the act of making the quitclaim deed.

(17) For a long time prior to the making of the extension, Bowen was held out by the corporation to the public generally as having authority to do business of the character of that transacted with defendant, and defendant relied upon his appearance of authority in taking such extension and relying thereon.

Upon the facts so found and others not necessary to be considered in regard to any point made upon the appeal, the court found as a matter of law that the Peerless Iron & Land Company and its grantee, the plaintiff, were estopped from denying the authority of Bowen to make the extension of time for defendant to cut and remove the timber, and that he was the owner of the timber upon the land, of the character described in his purchase of October 12, 1893, with the right to remove the same at any time before June 1, 1902. The complaint was accordingly ordered dismissed with costs, and relief was granted defendant upon a counterclaim—pleaded in the answer, as regards tax claims on the lands, owned by him—of which no complaint is made on this appeal. Exceptions were duly filed to the findings of fact.

For the appellant there was a brief by *Tomkins & Tomkins,* attorneys, and *John G. Williams,* of counsel; a supplemental brief by *Tomkins & Tomkins;* and oral argument by *W. M. Tomkins.*

For the respondent there was a brief by *H. H. Hayden,* attorney, and *H. B. Walmsley,* of counsel, and oral argument by *Mr. Hayden.*

MARSHALL, J.  Was the act of the president of the Peerless-
Iron & Land Company, in attempting to extend respondent's
privilege to cut and remove the timber, *ultra vires?* That is the
sole question for decision. It is useless to spend time endeavor-
ing to test the matter by the law respecting what a president of
a corporation cannot do by virtue of his office; that it gives
him no right to make contracts binding on his company; that
authority to that end in fact can only be conferred upon him
by the articles of organization or some by-law or resolution
passed by the board of directors, and that all persons dealing
with a corporation are bound to take notice of the limitation
upon its authority and notice of its articles of organization
and by-laws.   If the evidence warrants the finding that
Bowen, for years prior to the making of the extension, was
held out by the corporation as its general agent, and as hav-
ing authority to do such acts as the one in question, it is
bound thereby to the same extent as if authority were con-
ferred in the most formal manner.   That an artificial person
is estopped from denying that its agents possess all the au-
thority which it gives them the appearance of, the same as
a natural person, is just as well established as the principle
that the president of a corporation is not, *ex officio,* its gen-
eral agent or possessed of authority to make contracts bind-
ing upon it.   *Ford v. Hill,* 92 Wis. 194, 66 N. W. 115; *Mc-
Elroy v. Minnesota P. H. Co.* 96 Wis. 317, 71 N. W. 652;
*Senour Mfg. Co. v. Clarke,* 96 Wis. 469, 472, 71 N. W. 883;
*Northwestern Fuel Co. v. Lee,* 102 Wis. 426, 78 N. W. 584;
*Interior W. W. Co. v. Prasser,* 108 Wis. 557, 84 N. W. 833;
*Bullen v. Milwaukee T. Co.* 109 Wis. 41, 85 N. W. 115.  If
such were not the case the way would be open to easily invoke
the salutary rule of law regarding *ex officio* powers of cor-
porate officers to perpetrate fraud.   A general agent in fact
of a corporation may be and commonly is its president, and
when such is the case his official position is by no means a
limitation upon his powers as such agent.   *Ceeder v. Loud &*

Sons L. Co. 86 Mich. 541, 49 N. W. 575. As has often been said, intolerable mischief would result from requiring every person, at his peril, in dealing with the president of a corporation in a matter outside the scope of his duties as such, to first examine its records. The business world is not subject to any such dangers. The application of the doctrine of estoppel by courts has kept pace with the rapid development of corporate enterprise, so that, while ancient rules regarding limits upon powers of officers of corporations have not been abrogated, they are conclusively presumed to have been complied with or compliance to have been waived by the corporation, where justice so requires. Prof. Thompson, in his work on Corporations (vol. 4, §§ 4623, 4624), after reviewing a multitude of instances where the power of the president of a corporation was held to have been exceeded, used this language:

"After such a list of negations upon the powers of the president of a business corporation, the inquiry will arise whether there are any legal grounds upon which persons dealing with such bodies through their chief officers are protected."

To that he suggests that a careful scrutiny of the various applications of the rule limiting the power of the president of a corporation will show that they are, as a whole, consistent with natural justice; that whenever such rule is invoked to perpetrate a wrong, there are many countervailing rules upon some of which the person threatened with injustice may generally securely plant himself. He mentions the following as well established:

(1) "A corporation is estopped from denying, in the particular instance, that its president had the powers which it has customarily allowed him to exercise in the face of the public," 'under which a person, dealing with a corporation through its president, proves the latter's authority by proving that the corporation held him out to the public as possessing

the powers which he exercised in the given case, whereby it has become estopped as against an innocent person, from denying that he rightfully exercised those rights.' (2) A corporation cannot enjoy the benefits of a transaction and repudiate its responsibilities. Such enjoyment is deemed a ratification. (3) The presence of the corporate seal upon a paper purporting to be a corporate act, *prima facie* shows that the active agent of the corporation, in executing the paper, was duly authorized in the matter. (4) Proof of the authority of the president to act for his company in the particular transaction may be shown by an oral vote of the board of directors not made a matter of record, or otherwise by parol, and often equally well by circumstantial evidence.

Certainly, as this court has held on many occasions, the idea that every time a person deals with the officer of a corporation or person assuming to act in its behalf, he must under all circumstances take his chances on whether such officer or person has been specially authorized in regard to the matter, has no place in the law in our day. Proof of apparent authority of a corporate officer to contract in its behalf *prima facie* establishes actual authority so to do, and mere want of authority in fact will not relieve a corporation from the burden of a contract made in reasonable reliance upon such appearance of authority. What will sufficiently evidence apparent authority of the president of a corporation to make a contract in its name must be considered with reference to the character of the business involved, common knowledge of the manner in which corporate business is usually carried on, and many other circumstances,—significant among them the fact that it has come to pass that the president of a business corporation almost universally exercises the powers of a general agent for his company. One takes the obligation of a corporation, executed by its president in the regular course of business, not knowing any person in the transaction except such president, without a thought

of any necessity of making an inquiry as to whether he has been specially authorized in the matter or possesses power in the premises under any general law of the company. Presidents of corporations well-nigh universally exercise the power of a general agent, either by special or general authority regularly conferred, or by the tacit consent of the corporation, given by its governing board of directors, the public not knowing or stopping in business transactions to inquire how it was conferred. We are safe in saying that the circumstances where such is not the case are rare exceptions to the general course of corporate business. Such being the case, as a matter of common knowledge, if a corporation permits its president, for any considerable length of time, to so act, and its board of directors customarily omits to hold meetings for the purpose of directing the affairs of the corporation, apparently leaving its business affairs wholly to be looked after by its president, and specially, or by not acting affirmatively one way or the other, ratifies his acts, his authority to do the things which, by such conduct, he is apparently authorized to do is just as binding upon the corporation as if the power were conferred in the most formal manner.

Applying what has been said to the evidence in this case, it is far too strong in support of the findings of fact, that Bowen, as president of the Peerless Iron & Land Company, had apparent authority to extend respondent's time to cut and remove timber, to warrant us in saying that such findings are against the clear preponderance of the evidence. The evidence is substantially without dispute that the board of directors did not hold regular meetings for the purpose of directing the affairs of the corporation; that only two meetings were held from the time of the sale to respondent in 1893 till the extension was given in 1896. That strongly indicates that the whole business of the company was, by common consent, left with the president, as is often the case, particularly with small corporations. No special authority

was given to Bowen to make the sale in 1893, yet the sale was treated as valid, and without any knowledge coming to respondent of any action of the board of directors in the matter till long after the extension was granted. After such sale the business of the corporation was generally neglected by the board of directors. No provision was made even to pay its taxes. The lands were allowed to go to tax sale and tax deed, except in so far as respondent obligated himself, as part of the consideration for the timber, to pay the same. Bowen testified, in effect, that for years prior to the extension he was the only person that paid any particular attention to the corporate business; that he conducted it during such period substantially the same as if it were his own, reporting what he did to the members of the company whenever he could get them together, and otherwise to them in an individual way as he had opportunity to do so; and that his administration, at all times, appeared to meet with approval; that after the sale to respondent in 1893 and the appropriation of the money received thereon, partly to pay taxes upon the company's land and partly for division among its stockholders, he was unable to secure from the stockholders or directors any attention in particular to the company's business; that it did not thereafter receive any money, or pay out any money, or do any considerable amount of business, and none of consequence except what was done by himself. That is the effect of his evidence.

We will not further refer to the evidence in detail in an effort to carefully weigh it and demonstrate that it supports the findings complained of. It is sufficient to say that we are unable to discover that they are wrong under the rules governing the subject. There are many cases in the books where a corporation has been held estopped to deny that its president possessed the authority of a general agent, where the evidence on the subject was not nearly so strong as in

this case, as will be found by an examination of the cases to which we have referred. The custom being general, as we have said, for presidents of corporations, especially corporations having but little business to transact, to act in the capacity of general agents, to make contracts, to buy and sell property and to generally do the corporate business, evidence less strong is required to charge one with holding out its president as having such authority than is required to charge a natural person to the same effect.

It seems that the case is ruled by numerous decisions of this court we have cited, both as to the law and the facts. The gist of those decisions is that whenever the president of a corporation is found from day to day in general charge of the company's affairs, it is conclusively presumed, as to innocent third persons, that he possesses all the powers ordinarily incident to the position of a general agent, and such other powers as he in fact has customarily exercised for such a period of time as to charge the governing board of the company with knowledge thereof, and which appearance of power they have taken no reasonable means to protect the public from being imposed upon by. The doctrine of estoppel stands guard, so to speak, over the application of the doctrine limiting the powers of the president of a corporation, preventing, where the latter doctrine would otherwise lead to, injustice. Both doctrines are given effect in the adminstration of the law for justice, but not to enable a corporation, or those operating in its shadow, to perpetrate a fraud.

In disposing of this case we give no significance to the circumstance that Bowen did not add the title of his office to the corporate signature he affixed to the extension. That was a mere oversight. That he executed the instrument as president of the corporation there is no question. Nor do we give any significance to the fact that the paper was not executed under the seal of the corporation or signed by its secretary. It was a mere waiver of the right to forfeit the owner-

ship of property, the title to which passed to respondent under the instrument of October 12, 1893. It was not a conveyance of real property. It was not a writing required by law to be executed under seal or to be signed by the secretary of the company. Therefore the absence of the corporate seal and the signature of the secretary from it is of no importance. *Ford v. Hill,* 92 Wis. 194, 66 N. W. 115.

Neither do we give any significance to the fact, if it be a fact, that the sale of pine timber or the extension of time to cut timber from the lands was not by itself, strictly speaking, within the ordinary scope of the business of a general agent of the corporation. The payment of the taxes on the corporate property and obtaining the necessary money to that end was within such scope, and it abundantly appears that in 1893 the company had no other way of securing money for that purpose than by selling its pine timber; and in 1896, when the extension was given, it had no more appropriate way of providing for the payment of taxes upon its lands than by granting the extension as a condition thereof, as was done to the extent of one half of such taxes. Moreover, if we were to hold that the giving of the extension in consideration of the payment of taxes was not within the scope of Bowen's authority as a general agent of the corporation, under the circumstances it would seem that the recognition of his authority to sell the timber by the formal act of the board of directors ratifying the sale, and the broad general grant of power given to him in addition to such ratification, to sell the timber on the land, included power to grant an extension of the right to remove timber sold and paid for, in consideration of the payment of taxes on the land, which payment was necessary to preserve to the company the timber not sold, and the land also, though in our general discussion of the case we have given controlling effect to the facts found by the court, that the corporation, by the manner in which it permitted its president to represent it, held him out as possessing authority to

sell its timber and to make such contracts in regard thereto as the one in question.

*By the Court.*—The judgment is affirmed.