TIMME, Appellant, vs. KOPMEIER, Respondent.

*February 23—March 14, 1916.*

*Corporations: Directors: Contract to repurchase stock of employee: Validity: Public policy: Appeal: Findings of fact.*

1. The directors of a private corporation are considered in the law as standing in a fiduciary relation toward the stockholders, and a contract by such a director, dealing with matters of corporate interest, which is antagonistic to the free and impartial discharge of his official duties is void on the grounds of public policy unless all of the stockholders with full knowledge assent thereto.

2. Thus, a contract between a director of a private corporation and a purchaser of stock who became the manager of the company, by which it was agreed that if said manager's employment with the company should be discontinued for any reason he would sell his stock and the director would repurchase the same and pay full par value therefor plus *pro rata* share of accumulated profits, was void unless made with the knowledge and consent of all the other stockholders.

3. In an action by the manager upon such contract, a finding by the trial court that a stockholder, wife of one of the other directors of the corporation, did not know of or consent to or ratify such contract, is *held* to be sustained by the evidence.

[4. Whether the contract in such a case would be void if it provided only for an option on the part of the manager to demand that the director purchase his stock in the event of the discontinuance of his service with the corporation, is not decided.]

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge.    *Affirmed.*

This is an action brought to recover the value of 100 shares of stock, on a contract of repurchase of the stock, bought by plaintiff from the Kopmeier Motor Car Company.

The Kopmeier Motor Car Company was incorporated under the laws of the state of Wisconsin in January, 1909, with an authorized capitalization of $50,000. On October 15, 1909, the articles of incorporation were amended, and as amended authorized an increase of the capital stock from $50,000 to $100,000. Certificates of stock were issued to John H. Kopmeier, Norman J. Kopmeier, Waldemar S. J. Kopmeier, and Meta Kopmeier, wife of Waldemar. Norman J. Kopmeier surrendered a portion of his stock in November, 1910. There were three directors of the corporation at this time: John H., Waldemar S. J., and Norman J. Kopmeier. The plaintiff entered the employ of the Kopmeier Motor Car Company about October 1, 1909, as manager, and very shortly after this date he expressed a desire to purchase some stock in the corporation. At a meeting of the directors and Mr. Timme in November, 1910, it was agreed that the corporation should sell plaintiff 100 shares of stock at the par value thereof, namely, $10,000. He was also made a director. At the same time and as a part of the transaction plaintiff and defendant entered into the following contract:

"This agreement, made and entered into this 5th day of December, 1910, between A. F. Timme, of the city of Milwaukee, Milwaukee county, Wisconsin, party of the first part, and John H. Kopmeier, of the same place, party of the second part, witnesseth:

"Whereas, the party of the first part is now in the employ as manager, from month to month, of Kopmeier Motor Car Co., a corporation organized and existing under and by virtue of the laws of the state of Wisconsin, and has, on or about the 1st day of November, 1910, purchased from said company one hundred (100) shares of the capital stock thereof, for the price of one hundred dollars ($100) per share, for the purpose of increasing the capital of said company; and

"Whereas, the party of the second part is a stockholder of said company and desirous of increasing the capital of said

company to the amount of stock purchased by the party of the first part,

"Now, therefore, the parties hereto agree as follows:

"First. In consideration of the purchase and sale by said company to the party of the first part of said stock, and in consideration of one dollar and other good and valuable considerations, the receipt whereof is hereby acknowledged, party of the first part does hereby agree to and with the party of the second part that if, at any time while said party of the first part shall remain in the employ of said company, he should desire to sell said stock, option is hereby given to the party of the second part to purchase the same and to pay to the party of the first part therefor the full face or par value of said stock plus *pro rata* share of accumulated profits.

"Second. The party of the first part hereby agrees to and with the party of the second part that if his employment with said company is discontinued, either by mutual agreement of the said company and the party of the first part, or by the death of the party of the first part, or by the act of either said party of the first part or said company, or by operation of law, or for any reason whatsoever, the party of the first part shall sell to, and the party of the second part shall purchase, all of said stock and pay therefor the full face or par value thereof plus *pro rata* share of accumulated profits of said company.

"Third. It is mutually agreed, by and between the parties hereto, that all of the terms, covenants, and conditions of this contract shall inure and bind the respective heirs, executors, and administrators of the respective parties.

"In witness whereof the parties hereto have hereunto set their respective hands and seals in duplicate at the city of Milwaukee, Milwaukee county, Wisconsin, the day and year first above written.

"Witnessed by                          A. F. TIMME.
    "John T. Zilisch.                   JOHN H. KOPMEIER.
    "W. J. Kopmeier."

At the time this contract was made and executed the defendant was a director of the company and continued to hold this office up to the time this action was commenced. In August, 1912, plaintiff resigned from his position with the Kopmeier Motor Car Company and demanded of defendant

that he repurchase the stock in accordance with the above agreement.    Defendant has refused to repurchase the stock as provided in the contract.

The trial court found that Meta Kopmeier, wife of Waldemar Kopmeier, and a stockholder, knew nothing of this transaction and that she did not ratify it, and declared the agreement void.    Judgment was entered dismissing plaintiff's complaint, and from such judgment this appeal is taken.

*Lynn S. Pease,* for the appellant.

*Henry J. Killilea,* for the respondent.

SIEBECKER, J.    The trial court found that Meta Kopmeier had no notice or knowledge of the making of the contract between plaintiff and defendant for the repurchase of the stock by defendant from plaintiff and that she at no time consented thereto or ratified it.    We have examined the evidence and find that plaintiff's evidence and that of Meta Kopmeier is in sharp conflict on the point as to whether or not she had knowledge of the contract between plaintiff and defendant.    It is contended that the facts and circumstances show that Mrs. Kopmeier tacitly consented and acquiesced in having her husband represent her interests as a stockholder at corporate meetings and in the transaction of its business. If such consent and acquiescence were not positively refuted by other evidence in the case we would be disposed to accede to this claim.    But Meta Kopmeier testifies positively that she had no information of the transaction and this contract; that although she made diligent effort to ascertain about the affairs of the company from her husband and others she wholly failed to get the requested information; that she never assented to the contract, and that none of the stockholders and officers were authorized to represent and act for her in the matter.    Although the facts and circumstances might permit of an inference in conflict with these positive declarations of Mrs. Kopmeier, we cannot say that the trial court's finding on this point is against the clear preponderance of

the evidence. We are of the opinion that this finding of fact cannot be disturbed by the court. This state of facts on this point distinguishes this case from the case of *Jones v. Williams,* 139 Mo. 1, 39 S. W. 486, 40 S. W. 353, relied on by appellant. In that case the court found that a contract of repurchase of stock executed by one who was a stockholder and director was not the personal contract of such director but the contract of the corporation.

The principal controversy in this case arises on the question of the validity of the contract. The trial court filed an opinion in writing giving a full review of the cases before him and a full statement of the grounds for his decision. The court held that the provision of the contract whereby plaintiff and defendant agreed that in the event that plaintiff's "employment with said company is discontinued," either by mutual agreement or by plaintiff's death, *"or by the act of either said party of the first part or said company,"* or by operation of law *or for any other reason,* then plaintiff shall sell and defendant shall purchase " 'all of [plaintiff's] said stock and pay therefor the full face or par value thereof plus *pro rata* share of accumulated profits of said company,' is contrary to public policy and renders the agreement illegal and unenforceable, unless made with the knowledge and consent of all the stockholders of the corporation." The court declares this result must follow though it appears as fact in the case that the contract between plaintiff and defendant was made in good faith and that neither party had any intent of securing any secret or special benefit therefrom to the prejudice or disadvantage of the other stockholders.

Directors of a corporation occupy a position of trust and confidence and are considered in the law as standing in a fiduciary relation toward the stockholders and as trustees for them. The directors of a corporation are not permitted to use their position of trust and confidence to further their private interests, nor to become parties to contracts concerning corporate affairs intrusted to their management which con-

flict with a free and impartial discharge of their duties toward the stockholders. Any participation by them in contracts dealing with matters of corporate interest which is antagonistic to their free and impartial discharge of official duties is denounced by the law, unless all of the stockholders with full knowledge assent thereto. This doctrine is declared in *West v. Camden,* 135 U. S. 507, 10 Sup. Ct. 838, to be applicable "to the directors of a private corporation, charged with duties of a fiduciary character to private parties, on the view that it is public policy to secure fidelity in the discharge of such duties. (Citing.) We think this principle is equally applicable on the ground of public policy, although there was not to be any direct private gain to the defendant; for . . . it was the right of the other stockholders . . . 'to have the defendant's judgment, as an officer of the company, exercised with a sole regard to the interests of the company.' " These principles are recognized and applied in *Sauerhering v. Rueping,* 137 Wis. 407, 119 N. W. 184. Under the facts of the instant case the defendant became interested in purchasing plaintiff's stock whenever any of the contingencies specified in the contract happened. The defendant as director had a voice in determining whether or not plaintiff was to continue in the management of the corporate business and whether or not plaintiff's management was for the general interest of the corporation and its stockholders. Obviously his duties as director and his private interest under the contract to repurchase plaintiff's stock upon the conditions stated were antagonistic and his private interests might oblige him to act contrary to his duties toward the other stockholders. Under such circumstances such contracts are held void on the grounds of public policy unless all of the stockholders assent thereto. The transactions showing how plaintiff came to be employed and put into office by the corporation and his purchase of the stock and the making of the contract for resale thereof to defendant are closely inter-

woven and show that the plaintiff, the corporation, and the defendant were thereby mutually induced to make these arrangements by which plaintiff became interested as stockholder and officer. The case of *Wilbur v. Stoepel,* 82 Mich. 344, 46 N. W. 724, involved a contract like the one here, with two directors on the one part, without the assent of all the stockholders. The court in speaking of the antagonistic relation of such directors as contractors and corporate officers declares:

"Their natural desire and inclination would be to continue the plaintiff as manager, although it were against the interest of the other stockholders, . . . but for the agreement which might render them liable for the payment of a large sum if they failed to retain him. Nor is such contract made valid by the good faith of the parties to it. Its effect upon stockholders who are not parties to it, or do not consent to it, is the same in the one case as in the other. The law therefore wisely condemns and prohibits all such contracts."

Of other cases cited to our attention the following recognize the same doctrine and apply it to contracts of this character under varying circumstances: *Guernsey v. Cook,* 120 Mass. 501; *Withers v. Edmonds,* 26 Tex. Civ. App. 189, 62 S. W. 795; *Noel v. Drake,* 28 Kan. ,265; *Sims v. Petaluma G. L. Co.* 131 Cal. 656, 63 Pac. 1011; *Singers-Bigger v. Young,* 166 Fed. 82. Whether or not a contract between the parties to this action which provided only for an option on the part of *Timme* to demand a repurchase of the stock by defendant in the event of his discontinuance in the service of the corporation would be condemned by this rule of public policy, is not necessarily involved here and we express no opinion on that point. The case of *Bonta v. Gridley,* 77 App. Div. 33, 78 N. Y. Supp. 961, is in conflict with the foregoing authorities, as are some *arguendo* observations in other cases, but we are persuaded that the better rule is as held in the *Wilbur* and other cases above cited.

*By the Court.*—The judgment appealed from is affirmed.