W. C. ZACHOW COMPANY, Respondent, vs. GRIGNON and another, Appellants, and others, Respondents.

*September 23—October 19, 1920.*

*Novation: Burden of proof: Corporations: Power of president to effect a novation: Personal advantage to president: Statute of frauds: Promise to pay debt in particular manner.*

1. Where defendants claim they were released from an obligation and that another debtor was accepted in their stead, they have the burden of proving these facts.
2. Evidence showing that the president of a corporation had done business with the defendants at various times, that their dealings with the corporation had been through him, that he had taken orders for the corporation, and that he had promised to release the defendants from a debt and accept other debtors, is *held* not to establish a novation where there was no evidence that the president claimed to act for the corporation in making a substitution of debtors and the only direct evidence in the case is that he had no power to make such a substitution.

VOL. 172—15

3. It is not within the ordinary scope of corporate business for the president to release debtors by substituting his own obligation or that of a partnership of which he is a member; and in this case the act of the president in substituting his own obligation for that of certain debtors of the corporation is *held* too clearly antagonistic to the interests of the corporation to be upheld.

4. Though a promise may be in form to pay the debt of another, if it is founded upon a new and valuable consideration moving from the creditor and promisee to the promisor and is beneficial to the latter it is not within the statute of frauds.

APPEAL from a judgment of the circuit court for Shawano county: OSCAR M. FRITZ, Judge. *Reversed.*

The action was brought by plaintiff against *Grignon* and *Milles* to recover a balance claimed to be due for supplies furnished them for use in logging operations conducted by them for defendants *Zachow* and *Rogers.*

The action was originally brought by plaintiff against defendants *Grignon* and *Milles,* and they set up that in the latter part of 1913 there had been a settlement between the plaintiff, acting through *W. C. Zachow,* and the defendants, in which it was agreed that certain accounts and claims which defendants had against *W. C. Zachow* and the partnership of which he was a member should be accepted by the plaintiff in full satisfaction of plaintiff's claim.

There was a special verdict in the first trial in which the jury found that there was an agreement by which defendants *Grignon* and *Milles* were to be released, and that *W. C. Zachow* acted as agent for the *W. C. Zachow Company,* the plaintiff. The court thereupon set aside this verdict, denying defendants' motion for judgment, and ordered that *Zachow* and *Rogers,* the partners, be brought in as defendants and that a new trial be had. The court held in that proceeding that the testimony did not constitute a novation. Accordingly an amended answer was filed setting up an agreement between the defendants *Grignon* and *Milles* and the plaintiff, *Zachow Company,* acting through its president, *Zachow,* and the copartnership *Zachow* and *Rogers,* acting through

defendant *Zachow,* that the accounts between defendants *Grignon* and *Milles* and defendants *Zachow* and *Rogers* should be settled by allowing to *Grignon* and *Milles* as the balance due on their logging contract the amount of plaintiff's claim against *Grignon* and *Milles* for said supplies, and that the plaintiff accepted the account of *Grignon* and *Milles* against defendants *Zachow* and *Rogers* in place of and in payment of plaintiff's account against *Grignon* and *Milles,* and that *Zachow* and *Rogers* assumed payment of said account. Defendants also alleged that plaintiff should be estopped from questioning the authority of *Zachow* by reason of its long acquiescence.

Defendants filed a cross-complaint against *Zachow* and *Rogers* for services in conducting logging operations, and also alleged an agreement on their part to assume and pay the plaintiff its claim against defendants. That defendants *Zachow* and *Rogers* failed to make said payments.

The defendants *Zachow* and *Rogers* denied any such agreement. It appeared that *Zachow* was president of the *Zachow Company,* owned two thirds of the stock, and was also a director; that Mr. Kuhl was manager; and that the president sometimes took orders for supplies to be sold.

The appellants always made arrangements with *Zachow* when they bought supplies of the company and had dealt with him for a good many years. Appellants were loggers of what is known as "blown-down timber" on the Menomonee reservation, and they obtained necessary supplies from plaintiff's store. *Zachow* was also one of the partners of *Zachow* and *Rogers.* In the fall of 1912 *Zachow,* acting for *Zachow* and *Rogers,* made a contract with *Grignon* and *Milles* to do logging for the partnership. No written contract was ever made. The agreement was not entirely definite as to the prices, especially as to one class of timber called "mining timber." After the operations had been going on some time the defendants received a statement from the *Zachow Company* of the account for supplies.

The plaintiff corporation carried on a store at Cecil. *Zachow* lived at Shawano, ten miles away. *Zachow* and *Rogers* carried on a business at Newald, ninety miles from Shawano. *Rogers* resided at Newald, and the timber cut by plaintiff was near Newald. The testimony was that after receiving the statement the defendants went to Shawano and told *Zachow* that they had received the statement and urged him to get their logging matters straightened up. He told them he would fix up the account at the store and call it square, to which they agreed. Later they received another letter from plaintiff and again went to *Zachow*. He said he would fix it up as he had agreed to. These interviews were repeated several times. Defendants' testimony was to the effect that they had always dealt with *Zachow* in getting supplies.

*Zachow* denied that he had agreed that *Grignon* and *Milles* should be allowed an amount for putting in the timber to balance the account of the *Zachow Company,* but said he would see the *Zachow Company* and see that they would not make *Grignon* and *Milles* any trouble with that account until they got the regular credit of *Zachow* and *Rogers*. *Rogers* testified that he never had any talks with his partner, *Zachow*, with respect to taking care of the account and had given him no authority to make the arrangement which the defendants claimed.

The question of the substitution of *Zachow* and *Rogers* in place of *Grignon* and *Milles* was never brought to the attention of the board of directors of the *Zachow Company,* and it was testified that no authority had been given *Zachow* by the corporation or its directors to substitute *Zachow* and *Rogers* in place of *Grignon* and *Milles*.

*Zachow* and *Rogers* moved for a directed verdict on the ground that no novation had been shown, that the alleged agreement was within the statute of frauds, and that no authority had been given to *Zachow* to consent to a novation. Plaintiff also moved for a directed verdict in its favor on similar grounds.

The court directed a verdict in favor of plaintiff against *Grignon* and *Milles,* holding that the testimony would not admit of a finding that the partnership promised to pay the indebtedness of *Grignon* and *Milles* to plaintiff, and also on the ground that there was no sufficient evidence for a finding that the plaintiff had consented to a novation. That if there was an oral promise by *Zachow* to pay the *Grignon* and *Milles* indebtedness to the *Zachow Company,* it would not be enforceable as between *Zachow* and *Grignon* and *Milles* because of the statute of frauds.

The cross-complaint of *Grignon* and *Milles* was also dismissed.

For the appellants there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *A. S. Larson.*

For the respondent *W. C. Zachow Company* the cause was submitted on the brief of *P. J. Winter* of Shawano, and for the respondents *Zachow* and *Rogers* on that of *A. M. Andrews* of Shawano.

JONES, J. The indebtedness of the defendants *Grignon* and *Milles* to plaintiff, the *Zachow Company,* seems not to have been denied. But it was claimed that it had been released by a mutual agreement by which plaintiff was to release the defendants *Grignon* and *Milles* and to accept as a debtor in their stead the copartnership of *Zachow* and *Rogers.* Of course the burden rested on those raising this defense to prove it. They sought to do so by proof that the president of the plaintiff corporation had done business with them at various times, that he had taken orders for the corporation, that their business transactions with the corporation had been carried on through him, and that he had promised to make the substitution relied on.

The testimony does not show that in this transaction he claimed to act for the corporation, and the only direct testimony on the subject is that he had no authority to substitute *Zachow* and *Rogers* in place of *Grignon* and *Milles.* To sustain their contention appellants rely on such decisions

of this court as *Garrick T. Co. v. Gimbel Bros.* 158 Wis. 649, 149 N. W. 385; *Milwaukee T. Co. v. Van Valken-burgh,* 132 Wis. 638, 112 N. W. 1083; *St. Clair v. Rut-ledge,* 115 Wis. 583, 92 N. W. 234; *Figge v. Bergenthal,* 130 Wis. 594, 109 N. W. 581, 110 N. W. 798. But these were cases where the acts of the president of the corporation were far more nearly within the line of the ordinary corporate business or where the officer had been given extraordinary powers the exercise of which it would be inequitable to repudiate.

In our judgment the evidence entirely fails to bring this case within the line of the cases cited. It is very clearly not within the ordinary scope of corporate business for the president to release debtors and substitute for the indebtedness his own obligation or that of a partnership of which he is a member. While there is no evidence of any intentional breach of duty in this case, we cannot consent to establish a precedent under cover of which the grossest frauds might be practiced by transactions in which corporate officers might seek to secure personal advantage at the expense of stockholders. Unfortunately such advantage is too often taken when officers follow the letter of the law and where stockholders and the courts are helpless.

In the present case the contract alleged to have been made by the president was too clearly antagonistic to the interests of the corporation to be upheld. In numerous decisions this court has condemned contracts or transactions in which officers sought to serve their own interest at the expense of the stockholders. In a recent decision, where the conflict in interest seemed far more remote than in the present case, this court said:

"The directors of a corporation are not permitted to use their position of trust and confidence to further their private interests, nor to become parties to contracts concerning corporate affairs intrusted to their management which conflict with a free and impartial discharge of their duties toward the stockholders. Any participation by them in contracts

dealing with matters of corporate interest which is antagonistic to their free and impartial discharge of official duties is denounced by the law, unless all of the stockholders with full knowledge assent thereto." *Timme v. Kopmeier,* 162 Wis. 571, 575, 156 N. W. 961.

See, also, *Miley v. Heaney,* 168 Wis. 58, 169 N. W. 64; *Pietsch v. Milbrath,* 123 Wis. 647, 101 N. W. 388, 102 N. W. 342; *Meating v. Tigerton L. Co.* 113 Wis. 379, 89 N. W. 152; *Hiawatha I. Co. v. John Strange P. Co.* 106 Wis. 111, 116, 81 N. W. 1034; *Haywood v. Lincoln L. Co.* 64 Wis. 639, 647, 26 N. W. 184.

In the cross-complaint against *Zachow* and *Rogers* the defendants alleged as follows:

"That some time during the fall of 1913 or spring of 1914, the exact date of which these defendants are unable to state, it was agreed between these defendants and the said defendants, *Zachow* and *Rogers,* that in payment and settlement of the balance due these defendants, *Grignon* and *Milles,* from the said defendants, *Zachow* and *Rogers,* on account of said logging operations, the said defendants, *Zachow* and *Rogers,* would assume and pay to the plaintiff herein the amount of its claim against these defendants, which said claim had been incurred in connection with said logging operations, and these defendants agreed to accept the assumption and the payment of said account by the said *Zachow* and *Rogers* in settlement of their said claim against them growing out of said logging operations."

There remains the question whether the judgment dismissing the cross-complaint against *Zachow* and *Rogers* should be sustained.

In his opinion the circuit judge used language which seems to hold that the alleged oral agreement made by *Zachow* was a promise to pay the debt of another and void under the statute of frauds, although in the brief of respondent *Zachow Company* it is claimed that this was not the holding of the court.

In the brief of the appellants it is requested that, if this court should reach the conclusion that the plaintiff is entitled to judgment against them, final judgment be deferred

pending a new trial in order that appellants may in the same judgment recover against *Zachow* and *Rogers* on their cross-complaint in the event that they should prevail on a new trial.

It is the claim of appellants that the promise on which they rely is not repugnant to the statute of frauds because it was not a promise to pay the debt of another, but the promise of *Zachow* and *Rogers* for a valuable consideration to pay their own debt in a particular manner. It is well settled that such a promise is not an undertaking within the statute. Said Dixon, C. J., in *Dyer v. Gibson,* 16 Wis. 557, 583:

"We cannot discuss the question whether the promise of one person, though in form to answer for the still subsisting debt of another, if founded upon a new and sufficient consideration moving from the creditor and promisee to the promisor, and beneficial to the latter, is within the statute of frauds and therefore void unless it be in writing, expressing the consideration, and subscribed by the party making it. Decision has multiplied upon decision, with scarce a syllable of conflict, for more than a century, that such a promise is not reached by the statute; and it is now too late for discussion." *Fosha v. O'Donnell,* 120 Wis. 336, 97 N. W. 924.

We have come to the conclusion that the judgment for the plaintiff against the appellants should be affirmed, but that the part of the judgment dismissing the cross-complaint should be reversed, and that the appellants should be allowed in this action to prosecute their claim against *Zachow* and *Rogers;* but it does not seem necessary that the entry of judgment in behalf of the plaintiff should be delayed.

*By the Court.*—Judgment reversed. The cause is remanded for further proceedings in accordance with this opinion. Costs in this court should be taxed in favor of the plaintiff against defendants *Grignon* and *Milles,* and in favor of *Grignon* and *Milles* as against *Zachow* and *Rogers.*