KLINE, Respondent, vs. LITTLE RAPIDS PULP COMPANY, imp., Appellant.

*December 8, 1931—January 12, 1932.*

466

468

For the appellant there was a brief by *Frank & Pelkey* of Appleton, and oral argument by *Heber H. Pelkey.*

For the respondent there was a brief by *Benton, Bosser & Tuttrup* of Appleton, and oral argument by *Roger R. Tuttrup* and *Homer H. Benton.*

NELSON, J.   The defendant company contends: (1) that the verdict of the jury is not supported by any credible evidence; (2) that Thompson, as president of the company, had no express, implied, or apparent authority to enter into the alleged contract; (3) that in any event the contract, being oral and by its terms not to be performed within one year from the making thereof, is void under the statute of frauds; and (4) that the contract as claimed by the plaintiff and as found by the jury is void and unenforceable because it lacks mutuality.

As to defendant's first contention, the court is of the opinion that there is evidence which, if believed by the jury, is sufficient to support the verdict rendered, although there is much in the plaintiff's testimony and also in his subsequent letters and conduct which gives rise to grave doubts as to the credibility of his testimony.   Nevertheless we cannot say, taking his testimony as a whole, that it is so improbable as to be unbelievable.   This being so, the verdict, which has received the approval of the trial court, cannot be disturbed.

As to defendant's second contention, the court is of the opinion that such contention is sound and must result in a reversal of the judgment.   It is undisputed that Mr. Thomp-

son, as president of the company, had no express authority to enter into such a contract. It appears with equal clarity that Mr. Thompson, as president of the company, had no such apparent authority, by virtue of his office, as would permit him to bind the company to such an unusual, extraordinary, and unreasonable contract. The rule is well established in this state that a president of a corporation, although not expressly authorized so to do, may bind the corporation by entering into such contracts as pertain to the regular course of the corporate business under his direction. *Meating v. Tigerton L. Co.* 113 Wis. 379, 89 N. W. 152; *St. Clair v. Rutledge,* 115 Wis. 583, 92 N. W. 234. Such contracts, when entered into by a president of a corporation without express authority but while apparently in charge of its business, must relate to the ordinary business of a corporation—business which, by common usage, is managed in that way. Such contracts so entered into must be consistent with powers ordinarily exercised or ordinarily incident to such a position, or powers which have been customarily exercised for such a period of time as to charge the governing board of the company with knowledge of their existence. Neither the contract herein nor the proven circumstances warrant the conclusion that the alleged contract related to the ordinary business of the defendant company or was one which, according to common business usage, was handled in that way. That a president of a corporation may, without express authority, but by virtue of his office alone or the incidental or apparent authority with which he is clothed, bind a corporation to a contract of the nature claimed by the plaintiff, is, we believe, wholly without sanction in the law. The alleged contract is not one for the employment of the plaintiff for a definite and reasonable period of time, but is one which, if valid, might continue in force for many years or so long as the plaintiff might live. There is nothing in

the contract as claimed which provides for its termination except the disposal of the stock by the plaintiff or his death. Contracts entered into by a corporation providing for the employment of an officer for life have been held to be invalid because unreasonable, even when deliberately entered into pursuant to express authority of its board of directors. *Beers v. New York Life Ins. Co.* 66 Hun, 75, 20 N. Y. Supp. 788; *Carney v. New York Life Ins. Co.* 162 N. Y. 453, 57 N. E. 78; *Rollins v. Co-operative Building Bank,* 98 App. Div. 606, 90 N. Y. Supp. 631; *Greaves v. American Institute for Scientific Research,* 140 Misc. 413, 187 N. Y. Supp. 420. For an alleged contract which might run for many years, see *Chesson v. Richmond Cedar Works,* 172 N. C. 32, 89 S. E. 800, L. R. A. 1918 F, 6.

But disregarding all other considerations, there clearly appears in this case an insurmountable obstacle to plaintiff's recovery. From plaintiff's testimony it appears that the consideration for the contract to employ him so long as he should hold the stock, was his agreement to purchase and his actual purchase of fifty shares of common stock from Mr. Thompson and fifteen shares of preferred stock from the defendant company. This clearly presents a situation in which it must be held that Mr. Thompson, as president of the company, could not bind the company by a contract in which he was individually interested and acting in his own behalf in a matter in which his interests were clearly antagonistic to the interests of the company and its stockholders. No president of a corporation can enter into a contract which binds the corporation under such circumstances. Such contracts are held to be void on grounds of sound public policy. *Timme v. Kopmeier,* 162 Wis. 571, 156 N. W. 961. It has been held by this court in cases involving similar situations, but where the conflict in interest appeared to be less marked than in this, that such contracts are void. (Cases herein-

after cited.) It is not perceived how any case could involve a state of facts which more loudly calls for the application of the established law.

In *Timme v. Kopmeier, supra,* where an agreement was entered into by a director, without the full knowledge and assent of all of the stockholders, whereby he agreed to re-purchase from one about to become a stockholder all of the stock purchased from the corporation upon the happening of certain contingencies, it was said (p. 575) :

"Directors of a corporation occupy a position of trust and confidence and are considered in the law as standing in a fiduciary relation toward the stockholders and as trustees for them. The directors of a corporation are not permitted to use their position of trust and confidence to further their private interests, nor to become parties to contracts concern-ing corporate affairs intrusted to their management which conflict with a free and impartial discharge of their duties toward the stockholders. Any participation by them in con-tracts dealing with matters of corporate interest which are antagonistic to their free and impartial discharge of official duties is denounced by the law, unless all of the stockholders with full knowledge assent thereto."

The rule of the *Timme Case* has been firmly adhered to by this court and has been consistently applied to a number of similar situations in which corporate officers have acted for corporations in the making of contracts in which there existed a conflict of interest or, as otherwise stated, in which the interest of the officer was antagonistic to the interest of the corporation or its stockholders. *Miley v. Heaney,* 168 Wis. 58, 84, 169 N. W. 64; *W. C. Zachow Co. v. Grignon,* 172 Wis. 449, 179 N. W. 593; *McMynn v. Peterson,* 186 Wis. 442, 201 N. W. 272, and the numerous citations found in the cases just cited. When a contract is entered into by an officer of a corporation in which his interests are antag-onistic to those of the corporation, no showing of good

faith or lack of actual wrong or damage to the corporation or its stockholders can make such a contract valid or prevent it from receiving the condemnation which it merits under the well established law of this state.

In the view we take of this action it is deemed unnecessary to discuss defendant's third and fourth contentions.

As hereinbefore stated, it appears that there was ordered from the plaintiff 2,035 cords of spruce pulp-wood for which he has received no commission or compensation. The issues with respect to this purchase were not submitted to the jury and were not decided by the court. The view of the issues which the trial court took, apparently made it unnecessary to submit that issue to the jury. The trial court was undoubtedly of the opinion that the whole controversy could be determined by submitting the single question to the jury. This question submitted related only to the alleged agreement or contract. If the contract were valid, the verdict of the jury, together with the findings of the court, would dispose of the controversy, but since the contract found by the jury is held by this court to be void and since the plaintiff received an order for 2,035 cords of pulp-wood which he furnished to the company, it is apparent that the issues relating to that particular order have not been determined and, as we view the record, cannot be satisfactorily disposed of without a new trial.

*By the Court.*—Judgment reversed, with directions to grant a new trial on the issues relating to the purchase by the plaintiff, for the defendant, of pulp-wood for which he has not been compensated.