Johnson, Plaintiff and Respondent, vs. Crook and others, Defendants and Respondents: Banking Commission, Impleaded Defendant and Appellant.

*November 8—December 4, 1934.*

The cause was submitted for the appellant on the brief of *J. Henry Bennett* of Viroqua; for the respondent Johnson on that of *Martin Gulbrandsen* of Viroqua; and for the respondents Crook, Fitch, Lake, O'Neil, and Anderson on that of *Abel & Goodman*, attorneys, and *William M. Gleiss* of counsel, all of Sparta.

FRITZ, J.    The Commissioner of Banking contends that the Readstown Bank is neither liable to the plaintiff upon the

note in suit as a note made for its accommodation or otherwise, nor liable to the individual defendants in the event of their paying the amount adjudged to be owing by them on the note, which they had signed as makers. The following material facts are established by the evidence without conflict: Prior to November, 1926, the bank had loaned $9,424 to one Henthorn, and, by reason of legislation enacted after that loan was made, it was in excess of the amount permissible in November, 1926. On that ground the Commissioner of Banking took exception to that and other loans, and therefore duly notified the bank on November 3, 1926, that it was necessary to levy an assessment of at least one hundred per cent on its capital stock. In a letter written on August 4, 1927, by the deputy commissioner of banking, to the president of the bank, he stated that it appeared from the bank examiner's report "that the extent of an assessment . . . hinges upon whether or not the directors want personally to pay the excess of the Henthorn land loan. This excess should be paid without any recourse on the bank, or without any agreement that it be later paid out of the earnings of the bank." On August 13, 1927, the cashier of the bank in a letter advised the state banking department that the Henthorn "line is to be reduced by the directors. . . . They expect to take over part of this line themselves." On January 3, 1928, at a meeting of the stockholders of the bank, which was attended by a representative of the state banking department, a motion was adopted "that the board of directors be personally authorized to borrow an amount of money to reduce the Henthorn line to the law limit of $5,100; also that the stockholders waive all right to dividends until the board of directors are reimbursed." On January 6, 1928, the defendants Harold Crook, Fred Crook, and A. C. Lake, who were directors of the bank at that time, joined with four others who were also directors at that time, but who are not

defendants herein, in borrowing $2,500 from William Crook on a note payable to his order, which was signed by those directors solely in their personal capacity; and they paid the proceeds of their note to the bank so as to have the Commissioner of Banking reduce the ordered assessment from one hundred per cent to fifty per cent. The bank never paid anything on account of the principal of that note, but some payments of interest thereon were made from the undivided profits or earnings account of the bank, which the assistant cashier testified belonged to the stockholders. However, that note was paid on January 27, 1932, by the individual defendants, who were then the directors of the bank, using for that purpose $2,500 which they then personally borrowed from James Johnson, the plaintiff herein, for and in consideration of the note in suit, which they signed "Directors of the Readstown Bank. Harold Crook, Fred Crook, C. V. Fitch, A. C. Lake, Peter O'Neil, Oscar Anderson." A motion adopted by the vote of the defendants, as the members of the board of directors of the bank, at a meeting on January 27, 1932, provided:

."that the bank be authorized to borrow the sum of $2,500 for the purpose of reimbursing the directors who by authority of a resolution adopted at a stockholders' meeting held January 3, 1928, authorizing the then board of directors to personally borrow the sum of $2,500 for the purpose of reducing the Henthorn line of credit to $5,100, which note signed by the then board of directors is still outstanding and is equitably an obligation of the bank."

Upon those facts, the court concluded that the bank, as well as each of the individual defendants, is liable to the plaintiff for the entire amount of the note; but that that note is the primary obligation of the bank, and that the individual defendants are liable to plaintiff only as accommodation makers; and that upon the payment of any part of plaintiff's judgment by any of them, they would become entitled to file,

with the Commissioner of Banking, their claim against the bank for such payment, and share in all dividends thereafter declared in favor of the bank's creditors. Manifestly, the $2,500 which the individuals who constituted the board of directors of the bank on January 6, 1928, paid to the bank on that date were not intended as either a loan or a mere gratuity to the bank. Neither was it then intended that those individuals, in signing that note in their individual capacity, were to be mere accommodation makers for the bank, or that it was under any legal or moral obligation by reason of their delivery of the proceeds thereof to the bank. To find otherwise, wholly disregards the undisputed fact that the banking department's letter of August 4, 1927, expressly prescribed that the Henthorn loan excess "should be paid without any recourse on the bank, or without any agreement that it be later paid out of the earnings of the bank;" and that the cashier's reply under date of August 13, 1927, was that that loan "is to be reduced by the directors. . . . They expect to take over part of this line themselves." In that connection, it is very significant that, although there was a motion adopted at the stockholders' meeting on January 3, 1928, which pro-. vided that "the board of directors be personally authorized to borrow an amount of money to reduce the Henthorn line to the law limit of $5,100," and that "the stockholders waive all right to dividends until the board of directors are reimbursed," that motion did not, in either of those respects, authorize the bank itself to borrow money for the purpose specified, nor provide for any payment thereof by the bank, or any waiver of any right on the part of the bank in respect to the reimbursement of the directors. Under the maxim *expressio unius est exclusio alterius,* the provision in that motion that "the board of directors be personally authorized to borrow," does not admit of the inference that there was any authorization, by reason of that provision, for the bor-

rowing of any money by the bank, or that the obligation incurred on account of any such borrowing was to be an obligation of the bank; and, likewise, the express provision that "the stockholders waive all right to dividends until the board of directors are reimbursed," excludes any inference that there was to be any waiver or repayment otherwise than by the waiver by the stockholders in respect to their rights to dividends. On the other hand, that provision as to waiver solely by the stockholders is the only provision which appears to have been made in January, 1928, for any reimbursement of the directors on account of those $2,500. Furthermore, it is so obvious that no reduction of the Henthorn line would actually have been accomplished for the protection or benefit of the bank and its depositors by the borrowing of money as an ultimate obligation of the bank, that it is highly improbable that any such legal consequence was then intended or within the contemplation of any of the participants in that transaction. To hold otherwise would necessitate assuming that those directors intended, in bad faith and by subterfuge, to circumvent the Banking Commissioner's order for the one hundred per cent assessment, instead of their turning over to the bank the proceeds on their loan from William Crook without any obligation on its part to reimburse them, because they were personally and unconditionally taking over the excess of the Henthorn loan, in order to reduce the levy of that assessment from one hundred per cent to fifty per cent.

The receipt of those proceeds by the bank, under those circumstances, imposed no obligation, legal or moral, upon the bank or its creditors to reimburse those directors for the $2,500 which they raised personally in order to avoid that one hundred per cent assessment on the stock. The benefit which was then conferred upon the bank by its directors turning over those $2,500, was, in fact, received by it in consideration of the proposed reduction of the impending levy

of the additional assessment from one hundred per cent to fifty per cent; and thereby the aggregate amount which the directors together with the other stockholders were obliged to pay in proportion to their respective stock holdings, was reduced from $15,000 to $7,500. That substantial reduction in the impending assessment certainly constituted sufficient valuable consideration to entitle the bank to those $2,500, without the incurrence of any obligation—legal or moral— on its part to reimburse the directors, as accommodation makers or otherwise, on account of the $2,500 borrowed by them on their first note. Consequently, the decision in *Park Falls State Bank v. Fordyce,* 206 Wis. 628, 238 N. W. 516, is inapplicable.

As the $2,500 which were received on January 27, 1932, by the individual defendants as the makers of the note in suit were used by them to pay the personal obligation of the makers of the first note, and no part of the proceeds of that second note was received by the bank, there is, likewise, no legal or moral obligation on its part to reimburse the defendants, either on the theory that they were mere accommodation makers, or otherwise. The motion, by which those defendants attempted, on January 27, 1932, to authorize the bank to then borrow $2,500 to reimburse the directors, who were alone liable on their note to William Crook, and by which they undertook to declare that that note was "equitably the obligation of the bank," was adopted at a meeting attended by six directors, three of whom were personally liable on the William Crook note; and was obviously ineffectual to authorize the bank to borrow money to pay an obligation on which it was not liable, or to create any obligation or right for the personal benefit of its former directors, at the expense or to the prejudice of the bank. It is well established in this state that—

"The directors of a corporation are not permitted to use their position of trust and confidence to further their private

interests, nor to become parties to contracts concerning corporate affairs intrusted to their management which conflict with a free and impartial discharge of their duties toward the stockholders."

*Timme v. Kopmeier,* 162 Wis. 571, 575, 156 N. W. 961; *Miley v. Heaney,* 168 Wis. 58, 84, 169 N. W. 64; *W. C. Zachow Co. v. Grignon,* 172 Wis. 449, 179 N. W. 593; *Kline v. Little Rapids Pulp Co.* 206 Wis. 464, 470, 240 N. W. 128. It follows that the judgment must be reversed insofar as it provides for any recovery from the appellant because of any liability on its part in relation to the note in suit. On the other hand, it is not contended, on behalf of the directors, that the bank ever received any payment from Henthorn on account of the excess portion of his loan that was taken over by them. The record does not disclose any transaction by which any right or interest in Henthorn's loan was expressly recognized or preserved for the benefit of the directors, to the extent that they took over the excess part thereof or otherwise. As no such right or interest has been asserted on their behalf, there is no basis or occasion for any adjudication in that respect in this action. As the plaintiff did not seek to recover from the appellant, and contends that there is no liability on its part in relation to the note in suit, no costs will be awarded against him on this appeal.

*By the Court.*—Judgment reversed insofar as it provides for recovery from the appellant. No costs shall be taxed against the respondent James Johnson.